TALCOTT CROSBY AND ANOTHER *vs.* AMASA MASON AND OTHERS.

Executors and trustees, by bill in the nature of a bill of interpleader, may take the advice of a court of chancery upon questions connected with the discharge of their duties.

The interposition of the court in such cases is discretionary, and will not be exercised except in matters of importance.

The testator gave to Amasa his son "the sum of $90,000, which sum is to be made up of his notes, drafts, &c., which will be found sealed up and among my papers and directed to him, to be delivered to him by the executors in discharge of this bequest." There was found among the testator's papers a package sealed and directed in the hand-writing of the testator thus :—"For Amasa Mason—notes, drafts, &c., to make up the sum of $90,000 devised to him in my will." The package on being opened was found to contain notes, drafts, &c., against Amasa, for $90,281. Among the papers of the deceased, but not in the package, was a note against Amasa for $33,000 and interest, of a date anterior to the will, also a book account of $6,000, mostly prior to the date of the will. A memorandum in the hand-writing of the deceased, and his declarations, also a paper signed by Amasa, were offered in evidence to show that the $33,000 note and the $6,000 account were not intended to be included among the notes and drafts to be delivered to Amasa by the executors in discharge of the $90,000 bequest. Held, that this evidence was inadmissible.

Held also, that the fact of finding among the papers of the deceased the package answering the description in the will, the superscription on the package, and its contents, were all proper and admissible evidence for the purpose of identification.

Held also, that by the terms of the will in connection with this evidence, such notes and drafts only as were found in the package were to be delivered to Amasa by the executors in discharge of the bequest.

Interest is not chargeable upon book debts except by virtue of special custom or agreement. Held therefore, in the absence of all proof on the subject, that the book debt above named did not bear interest.

The will provided, in the event of payments thereafter made by reason of certain supposed liabilities, " whether the same be paid upon judgment recovered or by compromise," that one-fifth of the sums so to be paid be charged to his son. On these liabilities suits were brought and large sums properly and judiciously expended by the executors in defending against them. *Held,* that no part of these expenses of suit could under the will be charged to the son.

BILL in equity, brought by the petitioners as executors and trustees under the will of William Hail Mason, asking the advice of the superior court as to the proper construction of the will; citing in as respondents William H. Mason and John J. Mason, sons of the testator and legatees under the will, and Amasa Mason another son and legatee, to contest between themselves certain questions with regard to their relative rights which were affected by the construction of the will. The facts were found by the superior court, and the case reserved for the advice of this court. The facts are sufficiently stated in the opinion.

*W. W. McFarland,* for the petitioners.

*C. B. Goodrich* of Massachusetts, and *T. C. Perkins,* with whom was *C. W. Storey* of Massachusetts, for Amasa Mason.

*O. S. Seymour* and *Penrose,* for William H. Mason and John J. Mason.

DUTTON, J. The petitioners, representing themselves as executors of the last will and testament of William Hail Mason, late of Thompson in this state, and also as trustees of a large amount of property under the provisions of this will, ask the advice of this court as a court of chancery, with reference to what they claim to be doubtful questions on the construction of the will, and as to what their duties are in the settlement of the estate and the discharge of their trust.

It has been suggested on the argument that this is not the proper mode of settling questions of this kind between heirs, legatees and cestuis que trust.

We think it is too late in this state to raise such a question.

The case of *White* v. *Fisk*, 22 Conn., 31, was very similar to this. This court in that case, on the application of the executor and trustee, decided a number of questions on the construction of the will of the testator. Such applications ought not to be favored excepting where great interests are involved and a decision in the ordinary course of litigation would be attended with great inconvenience, delay and expense. It would be difficult to obtain competent and suitable persons to accept situations of great perplexity and responsibility, unless they were permitted to obtain the advice of a court of chancery as to the proper discharge of their duties. The court is not bound to entertain such an application, as its interference in such cases is always a matter of discretion. It is clearly for the advantage of all parties in interest to have questions of law, interrupting and delaying the settlement of estates, disposed of in this way, and they have a full opportunity to be heard. In this case it appears that an estate of three or four hundred thousand dollars is waiting for the decision of this court on certain points of law. If such an application ought ever to be entertained, it ought to be in this case.

The important questions in this case are not very numerous nor very complicated.

The testator, William Hail Mason, made a will prior to the execution of the will in question, containing substantially many of the same provisions as are contained in this will, which has been spread upon the record, and which it has been claimed may be referred to as a means of explaining some of the provisions of this will. Whether such use could be made of it we do not deem it necessary to inquire, as we do not find that any of the provisions of this will are so doubtful as to need aid of this kind.

The will in question was dated June 29, 1858. The principal question in the case arises on the construction which ought to be given to the third item of the will, which is as follows :—" Item third. I give, devise and bequeath to my son Amasa Mason the sum of ninety thousand dollars, which sum is to be made up and to consist of his notes, drafts, and other evidences of debt, advancements I have made him and

on his account, and charges against him on my books of account, which will be found sealed up and among my papers, and directed to him ; which notes, drafts and other evidences of debt are to be delivered to him by my executors, and proper discharges given him by them for the debts and charges aforesaid, and the same shall be in full of this bequest of ninety thousand dollars ; and in no case shall this item of my will be so construed or regarded as to call for the payment of any sum of money to fulfill the terms of the same." It appears by the finding in the case that after the death of the testator a package was found containing notes, drafts and other evidences of debt against Amasa Mason, amounting to a little over $90,000, which was sealed up, and on it written the words, " For Amasa Mason—accounts, notes, drafts, and vouchers to make up to him the sum of $90,000 devised to him by will." There were also found among the papers of the testator a note of $33,000, given by Amasa Mason to his father and due before the will was executed, and a book account of $6,000.78, chiefly also of an earlier date.

The counsel of Amasa Mason claimed that by the true construction of the will these evidences of debt ought to be given up to him as well as those in the package. They insisted that the expression, " to be made up and to consist of his notes, drafts and other evidences of debt, &c.," ought to be regarded as embracing all of the notes, drafts and accounts which he then held against Amasa—the words, " which will be found sealed up, &c.," being used merely by way of description.; and that the fact that certain notes, drafts and accounts were found in a package, although superscribed by the testator, could not vary this construction. It is insisted also that a phrase in the second codicil—" after the delivery of the said notes, drafts, and evidences of debt to my said son Amasa," is in aid of this as the true meaning of the will.

We think this would be a forced construction. The words in the will which are relied upon as sustaining it are immediately connected with the words, " which will be found sealed up and among my papers and directed to him." This shows very clearly that the testator intended to give up to Amasa those

evidences of debt and those only which would be found after his death sealed up in the package. We see no reason why a testator could not designate the articles which he intends to bequeath to a particular legatee, by pointing out the place where they will be found; as if he should give to a particular child all the clothes that would be found locked up in a certain drawer. The testator in the present case appears to have taken great pains to prevent any misunderstanding or mistake. He had selected the papers, sealed them up, and directed the package with his own hand.

There is nothing in the language of the codicil that leads to a different conclusion. On the contrary it refers to the debts and charges from which Amasa was to be discharged as having been mentioned and provided for in the third item of his will. We must resort to that item therefore to explain the meaning of the codicil.

To hold that these two debts, amounting to about forty thousand dollars, were to be given up to Amasa, in addition to those evidences of debt which were contained in the package, would destroy that general equality which it is manifest from the whole will the testator intended to make among his three sons. On the face of the will he gives to each of them about $90,000. But if these debts are to be given up to Amasa he would have about $40,000 more than the others. If the testator had intended to give to him so valuable an article as a note of $33,000, it is reasonable to suppose that he would have done it in explicit terms.

It is asked, if the testator did not intend that these claims should be given up and discharged with the others, why did he not explicitly except them. The obvious answer is, that he had no occasion to do so. They constituted a portion of his estate. They would be collectible like any other claims unless he made a different disposition of them. It was the same as if he had directed certain claims, describing them particularly, to be given up. Others not specified would of course remain a part of the estate.

Amasa's counsel objected to the superscription on the package on the ground that, if admitted in evidence, it would be mak-

ing out a bequest by interpolating a separate writing into the will. If such would be the effect the objection would be well founded. If there is not a complete bequest without adopting the superscription it would fail. The words of the superscription " devised to him by will," can not be used in evidence to show that the evidences of debt contained in the package were bequeathed. But the whole superscription may be used as a mark put upon the package by means of which it would appear that this package was the one referred to in the will.

It is objected further, that to introduce parol evidence to prove that such a package was found with such a superscription upon it, would be to control the operation of a written instrument by such evidence. We can see no greater objection to the introduction of this evidence to identify the package as the one to which the will refers, than to the common unobjectionable practice of introducing parol evidence to show that there is a piece of land which corresponds to the description contained in a deed. The facts regarding the finding of the package, its contents, and the superscription on it, are admissible for the purpose of identification and nothing else. .

After the death of the testator Amasa Mason gave a receipt for the $6,000.78, containing the words " to be reckoned as an advancement out of the estate towards bequests to me or for my benefit, in his last will and testament, the same to apply to any legacy made to me or to any person in trust for my benefit." His counsel now object to this as evidence to control or explain the will. The objection is well founded. However much it may tend to show that the principal claim made in this case was an after thought, still the admission, if any is made by Amasa in this writing, was merely of a point of law, and his opinion of the legal effect of the will, whether in his own favor or against him, is of no account.

The memorandum of William Hail Mason the testator on the $33,000 note, stating why he received it, and what his executors were to do with it, is no legal evidence against the maker of the note, as it does not appear that he was privy to the indorsement. As the will makes no reference to this

note or to this indorsement, it can not be used to give a construction to it.

The objection to verbal declarations made by the testator regarding the $33,000 note and the $6,000.78 book debt is still stronger.

After excluding all this testimony we are clearly of opinion that the note and book debt are legal and valid against Amasa in the hands of the executors as a part of the estate.

There are some questions of minor importance which can be more readily disposed of. The other devisees claim that the share of Amasa ought to be charged with the expenses of defending suits against William H. Mason as a partner of Gibson. The superior court finds that expenses were necessarily incurred, and that by the defences and judicious compromises a large sum was saved to the estate. We have no means of understanding the relation of Amasa to the Gibson concern. We must be governed therefore by the words of the codicil, which charges his share with one-fifth of only such "sum or sums of money" paid "upon or by reason of any such supposed or claimed liability or liabilities, whether the same be paid upon a judgment or judgments recovered, or by way of compromise of any such supposed liability or liabilities." Suits were brought and defended till a compromise was effected. The money paid on the compromise is not objected to. We see no equitable reason why the expenses should not be brought in, except that the will which is our only guide does not provide for it, and therefore this claim must be disallowed.

The executors ask advice whether, in case the $33,000 note and the $6,000.78 book debt shall be held valid against Amasa, interest ought to be computed on them. The note is drawn with interest and should draw it like any other note. No evidence has been given as to whether the book debt should draw interest or not. We understand the rule adopted in this state to be, that *prima facie* a mere account on book does not draw interest. *Day* v. *Lockwood*, 24 Conn., 186. Evidence may be introduced to show that by the agreement or understanding of the parties interest may be charged. Proof

of custom is also allowed. As there is no evidence on the point it is not a case for interest.

We advise the superior court to pass a decree directing that the estate be settled in conformity with the views herein expressed.

In this opinion the other judges concurred.

---

## SUPREME COURT OF ERRORS.

### NEW LONDON COUNTY, MARCH TERM, 1865.

Present,

HINMAN, C. J., DUTTON, BUTLER, McCURDY AND PARK, JS.