OSCAR NEISLER *et al. vs.* WILLIAM H. PEARSALL *et al.*

22  367
d29  559

PROVIDENCE—JANUARY 31, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Equity. Partition. Legal and Equitable Title.*

In a bill in equity for partition of real estate equity will not consider the defective execution of the power of appointment of a trustee, as it can in such a proceeding adjudicate as well upon the equitable titles involved as upon the legal title, wherever it may be.

(2) *Trusts. Power of Revocation.*

Where a trust deed expressly states that the trust shall be irrevocable, and there is no evidence of the intention of the maker of the deed outside of the deed itself, equity will not recognize the right of the voluntary grantor to revoke the settlement at will and without invoking the aid of the court.

*Semble,* that to warrant equity to set aside a voluntary trust, upon proper application, either fraud or that the settlement was unadvised or contrary to the intention of the settlor must be shown.

BILL IN EQUITY for partition. The facts appear in the opinion.

DOUGLAS, J. This is a bill for partition of a certain lot of land with buildings thereon, situated in the city of Providence. It is impossible to divide this estate by metes and bounds, and a sale and partition of the proceeds must be decreed. One undivided half of the estate was the property of Harriet L. Neisler, formerly Harriet L. Potter, who died August 18, 1897, and passed under her will, which was admitted to probate in the Municipal Court of the city of Providence, February 25, 1898. This interest is subject to a mortgage made December

14, 1886, by the said Harriet L. Potter to Isaac W. Sawin, of Providence. The mortgagee and the beneficiaries under the will are all parties to this suit, and no question is made as to their respective interests. The other half of said estate, together with other real estate, was owned by Helen L. Potter (who was the adopted daughter of Harriet L. Potter, and who afterwards became Mrs. Pearsall), and on the 6th day of October, 1880, the said Helen L. Potter, by deed of indenture duly executed by herself and by N. Dana Wells, conveyed the said estate, with other property, to said Wells upon certain trusts, as follows : "To take possession of the same and to receive the rents and profits thereof and apply them to the use of her, the said Helen L. Potter, during her life. And after her death, should her adoptive mother, Harriet L. Potter, survive her, and should said Helen L. Potter leave any lawfully begotten children or heirs her surviving, then to apply the same to the use of the said Harriet L. Potter, during her life, and at her death, should such children or heirs of said Helen L. Potter survive her, the said Harriet L. Potter, to grant and convey the said premises in fee simple to such children or heirs of said Helen L. Potter, *per stirpes* and not *per capita*. But if such children or heirs of said Helen L. Potter, if any, should not survive said Harriet L. Potter, then at the death of the survivor of such children, to grant and convey the said premises in fee simple to said Harriet L. Potter. But should the said Helen L. Potter survive her, the said Harriet L. Potter, and leave her surviving lawfully begotten children or heirs, then at the death of said Helen L. Potter, to grant and convey the said premises in fee simple to such surviving lawfully begotten children or heirs of said Helen L. Potter, *per stirpes* and not *per capita*.

"But if said Helen L. Potter should not leave any such children or heirs her surviving, and should she survive said Harriet L. Potter, then at the death of said Helen L. Potter, to sell and dispose of the said premises and pay over the proceeds thereof to the Society for Promoting the Gospel among the Seamen in the Port of York. But should the said Helen L. Potter not survive her, the said Harriet L. Potter, and

should she not leave any lawfully begotten children or heirs her surviving, then, at the death of the said Helen L. Potter, to grant and convey the said premises to said Harriet L. Potter in fee simple. And it is hereby stated and declared that said trust shall be irrevocable," etc. Then follow various powers of lease and sale, etc., to give the trustee most complete control over the investment of the trust fund, and a provision for appointment of new trustees if a vacancy should occur.

Helen L. Potter married William H. Pearsall November 14, 1880, and died leaving her surviving her adoptive mother, Harriet L. Potter, who married Oscar Neisler, and died August 18, 1897; and one child, Helen Marietta Pearsall, who was born November 3, 1882, and who now survives. Her title to this half of the estate, as an equitable fee simple, and her right to have the legal title conveyed to her are indisputable, unless the trust was revoked by certain conveyances which were made before her birth but after the marriage of her parents. On April 7, 1881, Harriet L. Potter and the society named in the trust deed released all their interest under its provisions to Helen L. Pearsall. On the same day the original trustee, N. Dana Wells, resigned ; and, acting under the powers in said deed to them granted, Harriet L. Potter and Helen L. Pearsall appointed William H. Pearsall trustee in place of Wells. The acknowledgment of the wife to this deed was defective and did not formally satisfy the requirements of the trust deed. On April 15, 1881, William H. Pearsall, trustee, conveyed the trust estate to his wife, Helen L. Pearsall, free of the trust. On December —, 1886, William H. Pearsall and Helen L. Pearsall, his wife, by their mortgage deed of that date conveyed to Isaac W. Sawin one undivided half of the estate in question, to secure the payment to said Sawin of one-half the award of referees who had been appointed to appraise the value of certain property which was to be left upon said premises by said Sawin at the expiration of his tenancy thereof. Under the mortgage there is claimed to be due the sum of $400, with interest thereon from December 31, 1897.

Helen L. Pearsall at her death left a will, with codicil thereto, of which copies were duly recorded in the Municipal Court in Providence, March 6, 1900. By this will, as modified by the codicil, the testator's property is given to her husband for life, with remainder in fee to her daughter. The daughter, therefore, takes this half of the estate in fee either immediately under the trust deed or subject to her father's life-estate under the will of her mother.

The question is thus plainly presented whether a voluntary grantor, without invoking the aid of the court, may revoke and nullify such a deed as was here made.

(1)   In the view which we have arrived at on this question, it is unnecessary to consider the defective execution of the power of appointment of the second trustee, as the court in this proceeding can adjudicate as well upon the equitable titles involved as upon the legal title wherever it may be. The intention to revoke the trust is clear, and, if necessary, equity can aid in the imperfect execution of the intention. 1 Jones on Conveyancing, §§ 45, 47; *Barrows* v. *Keene*, 15 R. I. 484, 486.

(2)   In support of the power of revocation we are referred to *Russell's Appeal*, 75 Pa. St. 269 ; *Garnsey* v. *Mundy*, 24 N. J. Eq. 243 ; and *Aylesworth* v. *Whitcomb*, 12 R. I. 298.

The first case was brought by the settlor after the death of her husband, leaving no children, and she alleged that the terms of the settlement were contrary to her intention in several important particulars. The relief was granted partly on the ground that the usual power of revocation, as well as a power of testamentary disposition in the case of the death of husband and children, had been omitted, and the court expressly found from the evidence that these omissions were not intentional. The court say on page 288 : " That the law of the land permits anyone to dispose of his property gratuitously if he please, when not prejudicial to the interest of creditors, and that his voluntary gifts made with full intention and knowledge of the act are irrevocable in equity as well as in law, when the power to revoke is not reserved, may be conceded. It may be admitted, also, that the mere omission of counsel to advise the insertion of a power to revoke will not

alone be a ground in equity to set aside a voluntary convey-ance.   But the absence of such a power and the failure of counsel to advise upon it are circumstances of weight, when joined to other circumstances, tending to show that the act was not done with a deliberate will.   Therefore when the facts show that the instrument was executed without advice or reflection, and without an intention to bind the party after the reasons and motives for executing it have passed away and the party is again *sui juris,* a court of equity will and ought to relieve as against mere volunteers claiming without consideration or a reasonable motive for continuing the donor's disability.   There may be reasons for continuing the disability intended by the grantor or settlor which would influence the chancellor to maintain it."    And on page 291 the court say of the rule adopted by Lord Justice Turner in *Toker* v. *Toker,* 3 DeG. J. S. 487, "that the absence of a power of revocation is a circumstance to be taken into account and is of more or less weight, according to the other circumstances of the case." Adopting this rule of action in the present instance, and we see that all the circumstances make the absence of the revo-cation clause in this settlement strong evidence of mistake and a sufficient ground of equitable relief.

In *Garnsey* v. *Mundy* the court, after reviewing several cases which uphold the doctrine that a voluntary settlement, though containing no power of revocation, would be set aside when it did not appear that the settlor intended to make the settlement irrevocable, grounded its decision of the case before it upon other considerations.   The chancellor says, page 248 : "It is not necessary, however, to rest a decision of this case adverse to the deed on so narrow a foundation as the mere absence of a power of revocation.   The circumstances under which a voluntary deed was executed may be shown with a view to impeaching its validity; and if it appears that it was fraudulently or improperly obtained, equity will decree that it be given up and cancelled.   In the present case there is no room for doubt that the grantor was induced by those in whom she very justly placed confidence, and by whose better judgment she was willing to be guided, to execute a volun-

tary deed whose effect she and they not only did not understand, but, on the other hand, misapprehended, and which, so far from being according to their intentions, was in two very important respects, at least, admittedly precisely the reverse. It was irrevocable, but they all supposed it was revocable and intended that it should be. It deprived the grantor of the power of sale, but they all supposed that she would have that power, and intended that she should have it clogged only by the necessity of obtaining her mother's consent and concurrence to any bargain or conveyance she might make. The deed contains no power of sale whatever. The testimony of all the parties to the transaction—the grantor, her mother, and uncle—has been taken in the cause. It satisfies me that the deed was not ' the pure voluntary well understood act of the grantor's mind ' (Lord Elden in *Huguesin* v. *Basely*, Lead. Cas. Eq. 406), but was unadvised and improvident, and contrary to the intention of all of them."

In *Aylesworth* v. *Whitcomb* it appeared that the deed was executed on the belief and understanding by the grantor and the trustees that it was revocable. The court say :

" It is true the instrument contains no power of revocation, but according to the weight of modern authority, this is only a circumstance to be taken into account and is not decisive, and where a deliberate intent to make it irrevocable does not appear, the absence of the power will be *prima facie* evidence of mistake. The decision of the case, however, is not grounded on this omission of a power of revocation." The court further say : " In the present case, as in *Eaton* v. *Tillinghast*, 4 R. I. 276, 280, an equitable freehold is given to the complainant and an equitable fee to his heirs at law, thus coming within the rule in Shelly's case."

The effect of the omission of a power of revocation in a voluntary deed of trust is discussed at length in *Hall* v. *Hall*, 8 Ch. Ap. Cas. 430, and the court concludes that the true rule is the one laid down in *Toker* v. *Toker*, quoted above. In the same case at page 440, Lord Selbourne, concurring, says : " The absence of a power of revocation in a voluntary deed, not impeached on the ground of any undue influence, is, of

course, material when it appears that the settlor did not intend to make an irrevocable settlement, or when the settlement itself is of such a nature or was made under such circumstances as to be unreasonable and improvident unless guarded by a power of revocation. I do not see on what principle the absence of such a power can be considered material in a case like the present, from which both these elements are absent."

These cases are not in conflict with the decisions of this court in *Stone* v. *King*, 7 R. I. 358, where the court found as matter of fact that the deed was intelligently and intentionally made by the grantor without reservation and hence should be enforced by a court of equity ; or, in the cases following : *Ray* v. *Simmons*, 11 R. I. 266, and *Thurber* v. *Sprague*, 17 R. I 634, where the court found that trusts were effectually constituted, and, having so found, enforced them.

In all these cases it is admitted that the deliberate intention of the grantor to settle his property beyond his own control makes his deed irrevocable. In suits brought to set aside or cancel such a deed the courts may differ as to the weight to be given to the circumstance of the mere omission of a power of revocation, as they may as to the weight of any other piece of evidence in the case ; but if convinced that the grantor intelligently intended to make his act irrevocable, they will hold it to be so against his subsequent attempt to cancel it.

We find nothing in these authorities to support the contention that the trust deed in this case could be revoked at the will of the grantor. All the cases proceed upon finding as matter of fact that the intention of the several grantors was not to make their conveyances irrevocable. We have no such ascertained fact as a basis of relief here. If the absence of a power of revocation must *prima facie* be attributed to mistake, it cannot be held that the insertion of a plain declaration that the grantor intends to make the deed irrevocable is not entitled to credence. We have no evidence of the intention of the maker of this deed outside of the deed itself.

If the grantor in her life-time had applied to the court to annul her voluntary conveyance and could have shown that it was improvidently or mistakenly made, the court, upon a proper case, would have ascertained her equitable rights and would have provided for them to the farthest possible extent; but the right cannot be recognized without trial or examination by a constituted tribunal simply on the solicitation of family and friends to revoke a deliberate settlement made with due formality and apparently with intelligent anticipation of probable contingencies.

In *Sargent* v. *Baldwin*, 60 Vt. 17, the court sums up its conclusion as follows:

"Upon a careful examination of this subject we have been unable to find any case where equity has set aside a voluntary settlement except on the application of the settlor, and then only on the ground of fraud, or where the settlement was unadvised or contrary to the intention of the settlor."

The claim against this half of the estate which is represented by the Sawin mortgage is not yet sufficiently explained by the evidence to enable the court to say whether it may not constitute a valid equitable claim, though the mortgage itself was void.

*Van Slyck & Mumford*, for complainants.

*Cooke & Angell, James Tillinghast*, and *William R. Tillinghast*, for respondents.