THE W. S. QUINBY COMPANY *vs.* LAURA B. SHEFFIELD ET AL.

Third Judicial District, New Haven, January Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The plaintiff's assignor, *F*, agreed in writing on February 13th, 1909, to buy, and the defendants to sell, certain real estate owned by the latter in New Haven, subject to outstanding leases and to all taxes and assessments thereon, for the sum of $70,000 net to the vendors, and to apportion and adjust the rents for the current year when the deed was delivered. Shortly thereafter the defendants, who were nonresidents, sent the vendee a memorandum adjusting the rents to the first day of the ensuing month, which showed that the buyer was to pay the defendants $1,667. This memorandum gave the name of each tenant and stated that his yearly rent was " equal to " a specified sum, " plus taxes " of a given amount. The first-named sum was then apportioned, and to the resultant amount chargeable to the buyer was added, without any apportionment, the full sum payable as taxes. *F* paid the defendants $71,667 and at once received from them a warranty deed which recited that the land therein conveyed was subject to outstanding leases and to taxes, all of which the " grantee assumes as part of the consideration for said premises, in addition to the $70,000 hereinbefore stated." No payment of the taxes having been made to the city, the plaintiff, a grantee and assignee of *F*, was obliged to pay them

Quinby Co. *v.* Sheffield.

in order to remove a tax lien from the property, and sought in this action to recover of the defendants the amount so paid. *Held:*—

1. That inasmuch as there was no agreement as to the payment of taxes except such as was contained in the written instruments, the question of their interpretation or construction, and therefore what contract the parties made, was one of law for the determination of the trial court, whose conclusion was reviewable on appeal.

2. That the contention of the defendants, which was, in effect, that *F* had agreed to pay the taxes twice: once as part of the rent and once as taxes proper,—was not the true and legal interpretation of their agreement; and that inasmuch as *F* had once paid the taxes to the defendants, although in the form of rent, the law would imply a promise upon their part to settle with the municipality; and therefore the plaintiff, who had been compelled to assume and discharge this burden, was entitled to reimbursement from the defendants. (*One judge dissenting.*)

3. That evidence was admissible to show that the tenants, under the leases assumed by *F*, had never paid the taxes twice in any form, since this tended to prove a practical construction placed by the defendants themselves upon the meaning of the word *rent;* and that receipts signed by the defendants' agent and given to such tenants were not too remote as ruled by the trial court.

4. That the delivery of the deed and the payment of the $71,667, were to be regarded as simultaneous acts, and therefore *F*'s acceptance of the deed did not impose any further or additional obligation upon him as to the payment of rent or taxes.

Whatever a tenant is required to pay as compensation for the right to occupy land may generally be termed rent. But if the taxes form part of the rent, a payment of the rent will be held to operate as a payment of the taxes, in fulfilment of a covenant to pay them, unless it clearly appears that the parties intended otherwise.

The intention of parties to a written agreement must be found in the language of the instrument itself; and therefore a finding as to such intention which is a mere inference or conclusion from the writing, is reviewable on appeal.

About a week after the payment of the $71,667 and after *F* had conveyed the property to the plaintiff, the defendants mailed to *F* the 1908 tax bill, and *F* acknowledged its receipt. *Held* that this did not furnish a sufficient reason for sustaining the construction of the agreement contended for by the defendants.

Argued January 18th—decided March 8th, 1911.

ACTION to recover moneys paid as taxes upon land bought by the plaintiff's assignor under a written agreement between it and the defendants, brought to and

tried by the Superior Court in New Haven County, *Williams, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error and judgment reversed.*

The plaintiff, The W. S. Quinby Company, a corporation doing business in Boston, Massachusetts, and which on March 5th, 1909, became the owner of two certain parcels of land situated in New Haven, seeks by this action to recover of the defendants, who are residents of Cleveland, Ohio, and who for many years prior to said date had been the owners of said real estate, the sum of $802.75, with interest thereon from November 19th, 1909, that being the sum paid by the plaintiff on said day to remove a tax lien from said real estate, and which sum it is claimed to have been the duty of the defendants to pay, and which it is alleged the defendants agreed to pay.

The following facts affecting the question of the defendants' alleged liability appear of record: In 1814 the Parish of Trinity Church of New Haven leased said property to John Scott, Jr., for the term of forty-six years, the lessee covenanting to pay "as a rent for the said letten premises, annually and every year, the sum of forty five dollars fifty cents, . . . to be paid on or before the first day of May in each year, . . . and also pay and answer all, and any taxes that may be laid and charged thereon during said term." In 1847 the Trinity Church covenanted with Chidsey & Bryan, assignees of said Scott, for a renewal of said lease for the term of forty-nine years from May 1st, 1860, upon the condition that on the first day of May, 1860, and at the commencement of every successive period of seven years thereafter, the annual rent for the seven years then next to ensue should be fixed and determined by the agreement of the parties, their heirs and assigns. On May 6th, 1902, the defendants, who had become

the owners of said leased property, and one Moeller, who had become a lessee under said Scott lease and the renewal thereof, agreed, by a writing of that date, that for the seven years next ensuing after the first day of May, 1902, such annual rent should be "the sum of Five Hundred ($500) dollars, and all taxes and assessments which shall be assessed on said land," and that said "Five Hundred dollars and taxes" should be paid "as stipulated and provided for in said Lease" (the Scott lease and the renewal thereof), and that Moeller should "pay all taxes and assessments" which might be assessed upon said leased premises "during the term of said Lease." On May 7th, 1902, a similar written agreement was made by the defendants with Rogers and Webb, who, as trustees, had become lessees under the Scott lease and renewal, which agreement provided that such annual rent should be "Seven Hundred and Forty Four ($744) dollars, and all taxes and assessments which shall be taxed upon said land" and also provided that said lessees should pay all taxes and assessments during the term of the lease. An agreement similar in form to that last described, except that the sum fixed as the annual rent was to be $180 and all taxes and assessments, was made at this time by the defendants with Edward Malley, who had also become a lessee under the Scott lease and renewal.

In June, 1908, taxes were assessed by the city of New Haven upon all of said land, and against the defendants, upon the list of 1908, to the sum of $769.66, which became due and payable January 1st, 1909, and upon one half of which sum interest at the rate of nine per cent per annum became chargeable after March 1st, 1909, and upon the whole of which interest at said rate became chargeable after September 1st, 1909, and such tax and interest became a lien upon said real estate.

On January 19th, 1909, and while said parcels of land

were still subject to said leases and to the lien of said taxes, the W. T. Fields Company wrote the defendants, "We are confident we can sell the property for $70,000 cash, this sum net to you." On February 4th one of the defendants wrote the Fields Company as follows: "Replying further to your favor of January 19th concerning our property on Church Street, New Haven, would say that I am now in a position to entertain a proposition for the purchase of same. However, no offer of less than seventy thousand dollars net to us will be considered. This, of course, would cover both the Church Street and Gregson Street frontage. The seventy thousand dollars would have to be cash payment, that is, ten thousand dollars down, and the balance as soon as the deed is executed and ready for delivery,—purchaser to assume the leases and all taxes and assessments now or hereafter due; rent to be adjusted as of date of payment of balance mentioned; purchaser also, of course, to stand all expenses of sale and commissions, if any, that is to say, the seventy thousand dollars shall be absolutely net to us." On February 11th, the W. T. Fields Company wrote the defendants as follows: "We are now prepared to purchase the Church and Gregson Street property on the terms mentioned in your letter of the 4th inst., and wired you to-day as follows: 'We offer seventy thousand and fifty dollars cash in accordance with your letter of fourth February. Now ready to pay ten thousand to your agent upon receipt of agreement to deliver warranty deed upon payment of balance.'" On February 13th the defendants and the W. T. Fields Company executed an agreement of sale and purchase prepared by defendants' counsel, a copy of which is attached to the complaint, and of which the following is a part: "That said first parties [the defendants] have this day agreed to sell unto the second party [The

W. T. Fields Company], its successors and assigns, the following described tracts or lots of land, situated in the City of New Haven. [Here follows a description of the two parcels in question.] Together with the hereditaments and appurtenances thereto belonging, but subject to all legal highways, and subject also to the leases now thereon, . . . and taxes and assessments for the year 1908, and thereafter, all of which second party assumes as part of the consideration for said premises, in addition to the $70,050 hereinafter stated. And the said second party hereby agrees to pay to said first parties, their heirs, executors, administrators or assigns, for the land aforesaid, the sum of Seventy Thousand and Fifty Dollars ($70,050), being the value of said premises, payable as follows: Ten Thousand Dollars ($10,000) cash in hand, receipt whereof is hereby acknowledged, and the balance of Sixty Thousand and Fifty Dollars ($60,050) upon the delivery to second party, within thirty (30) days, of warranty deed executed by first parties for said premises; said deed to be delivered to second party at the National Tradesmen's Bank in said City of New Haven, and said payment to be made to said bank by second party for account of said first parties upon such delivery; at which time and as of which date the rents under said leases shall be adjusted and settled, by payment from first parties to second party of such proportion as may have been collected in advance, and payment by second party to the first parties of such part thereof as shall have accrued to said date and then remain unpaid; it being further understood that said consideration of Seventy Thousand and Fifty Dollars ($70,050) for said land is entirely net to said first parties, and that said second party assumes and agrees to settle, and save the first parties harmless from, any and all liability for commissions, and from all ex-

penses, if any, in connection with, or growing out of, this sale, as well as the leases, taxes and assessments aforesaid."

Prior to February 24th, 1909, the W. T. Fields Company paid to the bank the $10,000, as required by said agreement. Pursuant to said agreement the defendants, on or about March 1st, 1909, forwarded to said bank a warranty deed of said property to the W. T. Fields Company, executed February 18th, 1909, together with a memorandum of the adjustment of the rents, copies of which are attached to the defendants' answer and are referred to as defendants' Exhibits 1 and 2.

The deed stated that for the consideration of $70,050, received to the full satisfaction of the grantors from the W. T. Fields Company, the grantors conveyed to said Fields Company the described two parcels of land "all subject to all legal highways, and subject, also, to the leases now thereon, . . . and taxes and assessments for the year 1908, and thereafter, all of which said grantee assumes as part of the consideration for said premises, in addition to the seventy thousand and fifty dollars ($70,050) hereinbefore stated," and that the grantors covenanted that the premises were free from all incumbrances "except as above expressly excepted and assumed by the grantee," and bound themselves to warrant and defend against all claims except "as above expressly excepted and assumed by the grantee."

The memorandum of adjustment of rents was as follows:—

"Rogers and Webb, Trustees, . . . rent equal to the sum of $744 per annum, plus taxes, their proportion on account of taxes for 1908 being $365.82; rent being payable

May 1st each year, for year then ending having been paid to May 1, 1908; proportion of $744 due Laura B. and Henry E. Sheffield for ten months, May 1, 1908, to March 1, 1909 . . . . . . . $620.00

All of 1908 taxes to January 1, 1909   365.82   $985.82

C. A. Moeller, . . . rent equal to the sum of $500 per annum, plus taxes, proportion on account of taxes for 1908 being $295; rent being payable May 1st each year, for year then ending having been paid to May 1, 1908; proportion of $500 due Laura B. and Henry E. Sheffield for ten months, May 1, 1908, to March 1, 1909   . . .   416.67

All of 1908 taxes to January 1, 1909   295.00   711.67

Edward Malley (37 ft. on Gregson St.), rent equal to the sum of $180 per annum, plus taxes; taxes amount to $108.84; has paid in full to May 1, 1909.

W. T. Fields Company is, therefore, entitled to a credit for the period March 1, 1908, to May 1, 1909, amounting to $30.

Gross amount due Laura B. and Henry E. Sheffield   . . . .   $1,697.49

Less credit, account of advance payment March 1, 1909, to May 1, 1909, made by Edward Malley   . . . . . . .   30.00

Net amount due Laura B. and Henry E. Sheffield . . . .   $1,667.49"

With said deed and memorandum, the defendants sent to the bank letters addressed to the grantors' said tenants, informing them of the sale of the property and directing them to account to the W. T. Fields Company for all money due or to become due on account of their several leases, and instructed the bank to deliver these letters to the Fields Company with the delivery of the deed.

On March 5th, 1909, the W. T. Fields Company paid to said bank the sum of $61,717.49, being the balance of said $70,050 plus the $1,667.49 stated in the memorandum of adjustment, and the bank delivered to the W. T. Fields Company said deed and memorandum, and said letters. On said March 5th the W. T. Fields Company quitclaimed all its right, title and interest in said premises to the plaintiff. On March 8th, 1909, the defendants executed an assignment to the W. T. Fields Company containing this language: "Whereas, there are leases of certain portions of said premises providing that the lessees shall pay all taxes and assessments upon the premises leased; now, for a valuable consideration, we hereby assign to the said The W. T. Fields Company, all that may be due to us from said lessees or any of them on account of such taxes and assessments, and our right to recover from said lessees or any of them the amount of any taxes or assessments that may be due and unpaid upon any and all of the premises so leased."

A letter of the defendants' attorneys, dated March 8th, contained this statement: "P. S. We enclose 1908 tax bill which we find amongst the papers in our file on the subject of this property." On March 10th, 1909, in replying to said letter, the W. T. Fields Company said: "We also acknowledge receipt of 1908 tax bill."

On November 17th, 1909, the W. T. Fields Com-

pany assigned to the plaintiff all the claims of the former against the defendants, a copy of which was attached to the complaint. On November 19th, 1909, the defendants having refused to pay said taxes, the plaintiff paid the same, with the accumulated interest amounting to $802.75, in order to remove the lien from said property.

Paragraphs 19 and 20 of the finding of facts are as follows:—

"19. Said payment of $61,717.49 was made with the full understanding on the part of said Fields Company that it was the correct and just amount then due to the defendants from said Fields Company on account of the purchase of said property under the terms of said agreement, and that the defendants in receiving said amount were to be under no further obligation for the payment of any taxes or assessments upon any of said property for the year 1908, or thereafter, but that said Fields Company were obligated to pay all of such taxes.

"20. It was never understood by said Fields Company at or prior to the time said sum of $61,717.49 was paid and said deed, Exhibit 1, was delivered to and received by said Fields Company, as aforesaid, that under the terms of said agreement the defendants should pay any part of said taxes. On the contrary said Fields Company then understood that it should pay said taxes."

*George E. Beers* and *William B. Arvine*, with whom was *E. P. Arvine*, for the appellant (plaintiff).

*James K. Blake*, for the appellees (defendants).

HALL, C. J. It is alleged among the reasons of appeal that the trial court erred in reaching, from the

facts found, the following conclusions stated in the finding, and which form the basis of its judgment in favor of the defendants:—

"1. That under the terms of the agreement between the defendants and said Fields Company of February 13, 1909, and under the terms and provisions of the deed, Exhibit 1, it became and was the duty of said Fields Company to pay all of said taxes in question.

"2. That said Fields Company paid said sum of $61,717.49, and the defendants received and retained the same, as a part of the purchase price to be paid for said property in question, pursuant to the terms of said agreement of February 13, 1909.

"3. That the defendants were under no obligation to said Fields Company, or the plaintiff as its assignee, to pay any part of the taxes in question."

These conclusions constitute the trial court's interpretation of the language of the agreement of February 13th and the deed of February 18th, read in the light of the facts and circumstances under which they were made. Such interpretation, as we understand it, is, in effect, that the W. T. Fields Company were required to pay the taxes in question, first, as a part of the rent which the grantee had agreed to pay, and second, as taxes which the grantee had assumed to settle and save the defendants harmless from.

All the facts, including those from which inferences or conclusions were drawn by the trial court, are either admitted by the pleadings or are stated in the finding. We have also before us all the evidence by which such facts were proved, and from which all such inferences were drawn. Such evidence is wholly documentary, and is substantially all set forth in the foregoing statement of facts. Counsel for the defendants admit in their brief that "there was no agreement between the parties as to the payment of taxes other than that con-

tained in Exhibit A (the agreement of February 13th), Exhibit 2 and Exhibit 1" (the deed of February 18th and the accompanying memorandum of adjustment of rents). The controlling question, therefore, in this appeal is, did the trial court correctly interpret the agreement of February 13th and the deed of February 18th? This question is one of law.

In *Beckwith* v. *Farmington*, 77 Conn. 318, 320, 59 Atl. 43, this court said: "The legal sufficiency of the documents to prove the essential facts was, in this case, a pure question of law; they were not dependent upon parol evidence in any way such as to present a mixed question of law and fact." In *Dawson* v. *Orange*, 78 Conn. 96, 119, 61 Atl. 101, we said: "The controlling evidence before the jury was of a documentary character. The construction of the various deeds and records, upon the undisputed facts, was for the court." In *Knowlton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 188, 194, 195, 44 Atl. 8, this court said: "The terms of the deed are before us, and also the situation of the premises and the acts of the parties in the nature of a practical construction of the right reserved. The main question is as to the meaning of the words they used, and proceedings in error would often be but an illusory remedy, were an appellate court to be considered as bound, in determining such a question, by the opinion of the court below, whenever that is based in part on circumstances attending or following the transaction, notwithstanding these are fully spread upon the record."

The inquiry in the present case is, was the W. T. Fields Company, by the terms of the written agreement and the deed, legally required to pay the taxes assessed in 1908 to the amount of $769.66, after having, prior to February 24th, paid to the defendants the $10,000, and on March 5th the $61,717.49, and

after the delivery and acceptance on the last-named day of the deed of February 18th?

The only specific sum named in the deed as the measure of the value of the land is $70,050. This sum is also expressly stated in the agreement to be the "value of the premises," and as the sum to be net to the grantors, and $70,000 is named, both by the grantor and the grantee, in the letters of January 19th and February 4th, in the former as the sum to be "net to you" (the defendants), and in the latter as the sum to be "absolutely net to us" (the defendants).

But the defendants argue that these expressions are consistent with their present claim, first, because it is admitted that, in addition to the $70,050, the Fields Company agreed to pay the proportional part of the rent which had accrued March 1st, and also that it agreed to pay the taxes, in addition to the $70,050 and the rent; and second, because the rent to be paid as such is a sum made up of two sums, to wit, the stated amount named in the leases, and the amount of the taxes added thereto. In other words, the defendants claim that the grantee was required by the terms of the deed and agreement not only to pay the $70,050, but also to pay the taxes, first, as a part of the rent which it had assumed to pay, and again, as the taxes which it had agreed to pay. This claim, of course, involves the contention that payment of the taxes as rent was not payment of the taxes. This claim is not sustained by the language of agreement and deed.

The taxes to be paid by the Fields Company were a known sum, stated in the memorandum of adjustment of rent, assessed against the defendants, and due and collectible by statute from them before the deed was delivered. If, in addition to the sum of $61,717.49 paid by the Fields Company to the defendants on March 5th as the balance of the value of the land plus

the amount of the rent, the Fields Company was also to pay the sum of $769.66 for the taxes assessed in 1908, why was the Fields Company not required to pay this additional sum before the deed was delivered?

It may be admitted that the taxes which the leases required the tenants to pay in addition to the fixed sum named were in one sense "rent." Whatever a tenant is required to pay as a compensation for the right to occupy land may generally be termed rent. But it by no means follows that one who under a covenant to pay rent, of which taxes are a part, does not in the payment of such rent perform a further covenant to pay the taxes. We think it should be held that he does, unless it clearly appears to have been the intention of the parties that the same taxes should be paid twice, once as a part of the rent, and again as the taxes covenanted to be paid.

The instruments before us do not show such an intention. The agreement states that the assumption of the leases, and the taxes and assessments of 1908, as a part of the consideration, is in addition to the $70,050, but not that the assumption of the taxes is in addition to the payment of the $70,050 and the payment of rent, which includes taxes.

It is true that the document delivered with the deed, and entitled "Memorandum of adjustment of rent," includes the taxes in question, but it states in separate items specific sums as the annual rents, and specific sums as the 1908 taxes. The fact that in this memorandum there is no charge, but, on the contrary, a credit to the Fields Company of $30 for the rent and taxes paid by Malley, very clearly indicates that it was not intended that those taxes of $108.84 should again be paid by the Fields Company either as rent or as taxes. We think it clear that this memorandum of adjustment of rent was filed with the deed, in accord-

ance with the language of the agreement of February 13th, for the purpose of informing the Fields Company, in connection with the information furnished by the deed itself, of the entire amount which under the agreement it was to pay, and that amount was the consideration named in the deed, $70,050, and the sum named in the memorandum, of $1,667.49 for rent and taxes. Neither the deed nor the memorandum name any other sum to be paid by the Fields Company.

We find nothing in the conduct of the parties under the described prior leases and agreements between the defendants and the other tenants, and on the basis of which the rents to be paid by the Fields Company were adjusted, to sustain the defendants' claim. The tenants Moeller, Rogers and Webb, and Malley, by the terms of their respective leases, agreed that their annual rent should be a named sum and taxes, and further covenanted to pay all taxes and assessments. But it does not appear that any of them ever paid or were ever asked to pay the same taxes twice, once under the covenant to pay rent, and again under the covenant to pay taxes; on the contrary, it would rather appear from paragraph 12 of the finding that the only sum these tenants paid for the use of the premises leased by them was the specific sum named in their respective leases as rent, and also the amount of the taxes.

The plaintiff offered to prove that these tenants did not so pay them twice, and for that purpose offered in evidence certain receipts, signed by the defendants' claimed agent, showing the payment and acceptance at different times of a certain sum as rent, which sum did not include taxes, and payment and acceptance at other times of a certain sum as taxes, which was the amount of the taxes only. These receipts were objected to upon the ground that these were not transactions between either the plaintiff and defendants or the Fields Com-

pany and the defendants, and the court excluded them as remote.

The ruling that they were remote was erroneous in so far as it excluded, upon that ground, the receipts given since 1902, when the adjustments of rent were made by the defendants with these tenants. Although neither the plaintiff nor the Fields Company were parties to the receipts, yet by the agreement and deed of 1909 the Fields Company assumed these very leases, and was thereby required to do what, by the terms of the leases, the tenants were required to do as to the payment of rent and taxes. Since there was a dispute as to whether the term "rent," as used in the leases, referred to the fixed sum named in the leases, independently of the taxes, or was intended to include the stated sum and the taxes, the construction placed upon it by the acts of the parties to the leases was admissible. *Knowlton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 188, 48 Atl. 8; *Raymond* v. *Nash*, 57 Conn. 447, 452, 18 Atl. 714.

It is argued that the judgment of the trial court must stand, because in paragraphs 19 and 20 of the finding it has conclusively found as a fact what the intention of the parties to the agreement and deed in question was. In the reasons of appeal the plaintiff asks for a correction of the record by striking out these paragraphs.

Of course, the intention of the parties to a written agreement does not control, unless that intention is expressed in the written instrument. *Bartholomew* v. *Muzzy*, 61 Conn. 387, 392, 23 Atl. 604. But these paragraphs do not purport to state the intention of the parties, but only the understanding of the Fields Company. Neither do they describe any act showing a practical construction of the agreement and deed by the parties, or either of them. Nothing more is stated in these two paragraphs than that the Fields Company understood,

first, that when it paid $61,717.49 it was the correct amount due the defendants; second, that the defendants were not required to pay the 1908 taxes; and third, that the Fields Company, after the payment of the $61,717.49, was required to pay said taxes.

We think the trial court did not err in finding such first understanding, as we think that understanding of the Fields Company was clearly correct. As to the other two, as the evidence shows no direct statement of such understandings by the Fields Company, they are found as inferences drawn by the court from the contents of the documents above set forth. As there is no evidence showing more clearly the understanding of the Fields Company regarding the payment of the taxes than is found in the agreement and deed and leases themselves, we think these findings were based upon, or intended as the court's construction of, these instruments. As such conclusions, they are reviewable. As findings of the mere opinion of the Fields Company as to the requirements of the agreement and deed, they are without weight. *Crosby* v. *Mason*, 32 Conn. 482, 487.

It is said that the acceptance by the Fields Company, after having paid the $71,717.49, of a deed which provided that the grantee should assume the taxes and assessments "for the year 1908 and thereafter," supports the construction contended for by the defendants. This language is not a statement that the grantee shall thereafter pay the taxes and assessments of 1908. It is a statement that the grantee assumes the taxes assessed in 1908, and those assessed after 1908, which latter the grantee as owner would, of course, be required to pay. And, further, the provision is that the grantee assumes the taxes of 1908, not in addition to the $71,717.49, which had then been paid, but in addition to the $70,050. If the acceptance of the deed

VOL. LXXXIV—13

containing this provision is to be construed as a promise to pay the 1908 taxes after the delivery of the deed, it should also be construed as a promise to pay thereafter the rent, which it is conceded had already been paid. The language is, "subject, also, to the leases now thereon," and "taxes and assessments for the year 1908, and thereafter, all of which said grantee assumes," etc. But the payment of the $61,717.49 and the delivery of the deed on March 5th are to be regarded as simultaneous acts.

It is not clear why the defendants' attorneys, on March 8th, after the payment of the $61,717.49 and the delivery of the deed, mailed to the Fields Company the "1908 tax bill," the receipt of which the Fields Company acknowledged by their letter of March 10th. The only reason given by the attorneys for so doing was that they found it "amongst the papers in our file on the subject of this property." The Fields Company did not then own the property, having quitclaimed it to the plaintiff on March 5th. The letter contained no request for the payment of the taxes, nor the acknowledgment of any promise to pay them. If, from the description of the bill as "1908 tax bill," it is to be assumed that it was a bill from the tax collector for the taxes assessed in 1908, it was probably not a bill against the Fields Company, nor against the plaintiff, but against the defendants. It may have been sent as a bill supposed to have been paid, or to be thereafter paid, by the defendants, or of the taxes which the Fields Company had paid to the defendants, sent to aid the Fields Company in obtaining from the tenants the reimbursement for the money that Company had paid for these taxes, and which, from the notices and assignments above stated, the Fields Company or the plaintiff was entitled to receive. The mere fact that this bill was so sent and acknowledged, does not furnish a

sufficient reason for sustaining the construction of the agreement contended for by the defendants.

The agreement of February 13th contemplated that the defendants should receive $70,050 as the value of the premises in question on March 1st, 1909, as the net purchase price which the defendants were to receive, and, in effect, the net sum which the Fields Company was to pay. The defendants were to receive more than $70,050, but the sum to be received in excess of that sum was money which they regarded as having been earned by the property prior to March 1st, namely, the fixed sums named in the leases as rent, and the amount of the unpaid taxes which the tenants had in their leases agreed to pay. That amount was definitely fixed by the memorandum as $1,667.49, and that sum with the $70,050 was the entire amount which the Fields Company were required to pay, either directly or indirectly. The Fields Company were in effect to pay but $70,050 for the premises. That was the value placed by both parties upon the property itself. The Fields Company was to pay more than that sum to the defendants, for the reason that it was to pay to them the earnings of the property, as above stated, up to March 1st. This arrangement, however, was not for the benefit of the tenants, but to secure payment of this sum to the defendants before they parted with their title, and was to be repaid to the Fields Company by the tenants under the notices given to the tenants and the assignments given to the Fields Company. When so repaid the Fields Company would have paid only the net sum of $70,050 for the property.

The Fields Company has, pursuant to the agreement, paid the taxes in question to the defendants by the payment of the $1,667.49 in addition to the $70,050. There was an implied promise that the defendants would pay these taxes to the municipal authorities.

By their failure to do so the plaintiff has been compelled to pay the sum of $802.75, and is entitled to reimbursement from the defendants for such payment.

There is error in the judgment, and it is reversed, and the case remanded with direction to render judgment for the plaintiff for $802.75, with interest from November 19th, 1909.

In this opinion PRENTICE, RORABACK and WHEELER, Js., concurred.

THAYER, J. (dissenting). At the time the February agreement was made the taxes for the year 1908, amounting to $769.66, were due from the defendants to the city of New Haven, and were a lien upon the land to which the agreement relates. On March 1st the Fields Company accepted a deed of the land from the defendants, drawn in strict accordance with the terms of the agreement, in which it was stated that the premises were subject to the taxes for the year 1908, which the grantee assumed and agreed to pay as a part consideration for the premises. The plaintiff as the grantee of the Fields Company has been compelled to pay the taxes to protect the property, and as assignee of the Fields Company brings this action to recover the amount so paid. The plaintiff's case, as stated in the complaint, is that the Fields Company at the time the land was conveyed paid to the defendants $660.82 upon the taxes, and that the defendants' tenant, Malley, paid to them the balance of the taxes, $108.84, and that it was agreed between the Fields Company and the defendants, in consideration of the amount so received, that the latter would pay the taxes so assessed upon the land. The court has found, and it was admitted by the plaintiff at the opening of the trial, that there was no express promise by the defendants to pay

the taxes.   To recover, therefore, the plaintiff was bound to prove a state of facts from which such alleged promise is implied as matter of law.   .

The Fields Company in the agreement expressly covenanted to assume and settle the taxes, and its acceptance of the deed containing the statement that it assumed the taxes as part of the consideration for the premises was equivalent to a covenant on its part over its own signature, when the transaction was closed, to assume and settle them.   *Foster* v. *Atwater,* 42 Conn. 244, 254; *Woodruff* v. *Baldwin,* 72 Conn. 439, 442, 44 Atl. 748.   It is claimed that these covenants were performed by the payment to the defendants of the amount of the taxes at the time the deed was given, and that the law thereupon raised a promise on the part of the defendants to the Fields Company to pay the taxes to the taxing authority.   When the deed was delivered on March 1st, and as of that date, there was, pursuant to the agreement, an adjustment of the rents in accordance with the memorandum of adjustment which appears in the statement of the case.   Under each of the leases the rent to be paid was a fixed sum and taxes. Malley, prior to March 1st, paid his full year's rent to May 1st, $108.84 of which was the amount of taxes assessed upon the land leased by him.   In the adjustment the Fields Company paid no part of the Malley rent, but received from the defendants, as rent not yet accrued under his lease, $30.   The other two tenants had paid no part of their rent, and the Fields Company in the adjustment paid the amount thereof which had accrued up to March 1st under their leases, in which was included $660.82 as the amount of the taxes upon the land occupied by those tenants.   The defendants at this time gave the Fields Company a written notice to these two tenants of the transfer of the property, and that in the future they should account to the Fields

Company for all amounts then due or thereafter to become due under the leases. The payments thus made by the Fields Company in adjustment of the rents, and by Malley in paying his rent, are the only payment of the taxes made or claimed to have been made to the defendants.

The majority of the court hold that under the written instruments before us the Fields Company was under two covenants, one to pay the rent, and one to assume the taxes; that the taxes were a part of the rent which was covenanted to be assumed; that having paid the rent the Company must be held to have paid the taxes; and that such payment was a performance of the other covenant, because the instruments in question do not show an intention on the part of the parties that the Fields Company should pay the taxes twice.

This conclusion rests upon the general proposition that one under covenant to pay rent, of which taxes are a part, must be held, in the payment of such rent, to perform a further covenant to pay the taxes, unless it clearly appears to have been the intention of the parties that the same taxes should be paid twice, once as rent, and again as taxes covenanted to be paid. Passing the general proposition, I concur in the conclusion that the instruments in question do not show an intention on the part of the parties that the Fields Company should pay the taxes twice. I dissent from the conclusion that those instruments contain a covenant by the Fields Company to pay rent of which taxes are a part, and also from the conclusion that the payment in fact made by that Company was a payment of the taxes to the defendants, or was in any way a performance by it of the covenant, contained in the agreement made before the payment and renewed by the acceptance of the deed after the payment, to assume and settle the taxes.

In determining the effect of those instruments they are to be interpreted in view of the situation of the parties and the circumstances connected with the transaction, and every part of the writings is to be considered in the light of the object which the parties had in view in using the language employed. *Shaw* v. *Pope*, 80 Conn. 206, 209, 67 Atl. 495; *Weinberg* v. *Valente*, 79 Conn. 247, 249, 64 Atl. 337. The defendants were the owners of a reversion in the property in question, expectant upon the termination of leases, the terms of which were to expire on the first of May following the agreement. The rent reserved in the leases was payable annually at the end of the year, so that for the year then to expire it was payable on May 1st, 1909. It amounted to $2,193.66, more than three fourths of which had accrued at the date of the agreement. The land was subject to the taxes for 1908. The Fields Company, desiring to purchase the property, had made an offer for it. It was familiar with the facts just recited and with the contents of the leases. The grant of the reversion to the Fields Company under these circumstances would pass to it as incident to the reversion the rents reserved in the leases. *King* v. *Housatonic R. Co.*, 45 Conn. 226, 233. But if the rents should be paid in advance and before the grant, they would be severed from the reversion, and the grantee would not take them. *Farley* v. *Thompson*, 15 Mass. 18, 25; *Stone* v. *Patterson*, 19 Pick. (Mass.) 476, 477. Both parties knew this, for it was the law which they are presumed to know. The agreement was signed under these circumstances. It appears therein that only the reversion was to be granted, and that it was to be subject to the taxes, which were to be assumed as part of the consideration. The "premises" to be conveyed were not the land unincumbered, therefore, but the reversion, expectant upon the termination of the

leases, subject to a tax lien. It was this for which the
defendants were to receive $70,050 net. There was also
in the agreement a provision relating to an adjustment
of rents. What object had the parties in view in mak-
ing this provision? Clearly it was not the intention
that either of the parties should pay the rents. It was
expected and understood that the tenants would pay
these. The provision related to what should be done in
case the tenants should, as Malley did, pay the rents to
the defendants before they became due and before the
transfer of the reversion, and also in case the tenants
did not pay the rents in advance of the transfer. In the
latter case it was, of course, intended and expected that
the tenants would pay the rents as they had covenanted
to do, but to the Fields Company, as the law would
require them to do. The purpose of the provision,
therefore, was not to provide for a payment of the rent
which was reserved in the leases. The stated purpose
is an adjustment of the rents. But "rent" is a word of
various meanings. It is defined by Blackstone and
others to be a certain profit issuing out of lands in re-
turn for their use. Technically it means that which the
tenant renders to the landlord out of the land. Gen-
erally, as between landlord and tenant, it is referred to
as that which is paid by the latter to the former for the
use of the land. But rent as an incident of the reversion
is a right, an incorporeal hereditament. It is a right to
the profits of the land as distinguished from the profits
themselves. It was this right with reference to which
the parties were dealing. The rents referred to were
those incident to the reversions, expectant upon the
termination of the three leases. The defendants in their
letter of February 4th, indicating that they were pre-
pared to receive a proposition for the purchase of the
property, stated, as one of the conditions, that there
must be an adjustment of the rents as of the date of the

transfer. They were unwilling, for the consideration proposed, to allow the grant of the reversion to carry to the grantee the right to receive from the tenants nearly $2,000 of the accrued earnings of the property. Presumably the Fields Company, if the rents should be paid in full to the defendants, would be unwilling to accept a grant of the reversion which would permit the defendants to retain the amount representing the unaccrued portion of the rents so paid. An equitable adjustment between the parties would in either case be called for, because without it the grant would lead to results which would be unsatisfactory to the parties. It would be equitable in the former case for the purchaser to advance to the vendors the amount of the rents accrued, but not payable at the date of the transfer, and in the latter case for the vendors to remit to the purchaser the amount of the unaccrued rents which they had received. This was what the parties agreed to do, and afterward did. But such payment by the Fields Company was not a payment of rent. The rent was still unpaid and undischarged. The tenants were still to pay that. And there is nothing in the case to show that they have not fully paid it to either the Fields Company or its assignee, the plaintiff. The Fields Company by their payment did not pay the rents, but thereby purchased them or the right to receive them; for we may presume that without the adjustment they could not have secured the grant of the reversion.

Whether under the leases the taxes were a part of the rent is of no consequence, since the agreement shows that the payments made by the Fields Company were not, and were not intended to be, a payment of the rents reserved in the leases. The payment of the taxes as a part of these rents was the only payment claimed by the plaintiff to have been proved as the foundation

for the defendants' implied promise to pay the taxes. The first and third conclusions of the Superior Court were correct and sustained its judgment for the defendants.