## H. A. P. BASSETT v. W. T. MARTIN.

### No. 3340.

1. **Common Source of Title.** — The contention in this suit is over the ownership of about twenty acres of land lying between two beds of Rocky Creek making an island. The plaintiff had held under a deed calling for the Rocky Creek as south boundary, and under another deed a tract adjacent and calling for Rocky Creek for its north boundary. Subsequently plaintiff sold south of the creek a tract calling for it as the north boundary of the tract sold. This was claimed by the defendant under regular conveyances. In suit by plaintiff, he claimed that the bed or stream on the south side of the island was Rocky Creek. The defendant claimed that the bed north of the island was the Rocky Creek called for in his deeds. *Held*, this presented a case of common source of title.

2. **Abstract of Titled and Patented Lands.**—We know of no authority for admitting the book known as the "Abstract of Titled and Patented Lands" as proof that title had been issued by the State or former governments to the grantee named therein.

3. **Immaterial Evidence—Wife Joining in Deed for Community.**—Testimony showed deed from the patentee to Lott, and from Lott and wife to another under whom the plaintiff deraigned title. Lott's wife was not concluded by a regular privy acknowledgment. *Held*, that her joining in the deed was unnecessary, and the imperfect certificate of privy acknowledgment harmless as against the husband's vendee.

4. **Fact Case—Latent Ambiguity.**—The testimony showed that both channels of the stream at one time had been known as Rocky Creek. The deed from plaintiff through which defendant deraigns title calls for Rocky Creek as the north boundary of the tract sold. This presents a deed unambiguous on its face, but which when applied to the ground becomes uncertain as to which channel was meant. It is clearly a case of latent ambiguity. Testimony was properly admitted to explain, and it showed conclusively that at plaintiff's sale of the land south of the creek the south channel was pointed out as the Rocky Creek, the north boundary of the land sold. The actual intention of the parties must govern. The mesne conveyances copied the deed from the plaintiff in its description, so that no greater rights accrued from subsequent transfers. Such deed duly recorded would not be a basis for limitations of five years for land north of the south channel.

5. **Payment of Taxes.**—The defendant paid taxes upon 200 acres out of the survey of which the land in controversy was a part. He owned by undisputed title about 210 acres, which added to the 20 acres made 230 acres subject to taxation. It will be presumed that his payment of taxes was upon lands of which his title was undisputed. Such facts will not support the five years statute of limitations.

6. **Prayer for Relief.**—In the petition the prayer is, "That the defendant [be cited] to answer this petition, and that plaintiff have judgment for the restitution of the above described premises, and for damages and for costs of suit." This was sufficient to authorize the recovery of the land described and a writ of possession therefor.

APPEAL from Grimes. Tried below before Hon. NORMAN G. KITTRELL.

The opinion states the case.

*T. C. Buffington*, for appellant.—1. The court could not go beyond and grant relief not prayed for in plaintiff's petition. Plaintiff's prayer

was for special relief, the restitution of the premises described, and for his damages and costs of suit.    He makes no prayer for general relief. Rev. Stats., art. 1195; Moore v. Guest, 8 Texas, 117; Hogan v. Kellum, 13 Texas, 396; Hipp v. Huchett, 4 Texas, 20.

2.    The original patent or record of same, a certified copy of the records of the General Land Office of the State, showing the issuance of said grant to James Cox by the State, was the best evidence of a grant to James Cox.    The book of abstracts of land titles is not, nor does it purport to be, a certified copy of the records of the General Land Office of the State of Texas; nor does the law authorizing its publication make said book competent or legal evidence in suit of trespass to try title to land.    Rev. Stats., arts. 2252, 2259; Vol. 1, Shaw & Blaylock's Abstracts of Land Titles; Act March 19, 1875, to provide for the compilation of abstracts of land titles.

3.    The privy acknowledgment being radically and fatally defective, the deed record was not admissible, and should have been excluded by the court.    Act February 2, 1841; Pasch. Dig., p. 126; 26 Texas, 737.

4.    The defendant was entitled to recover under his plea of five years limitation.    Rev. Stats., art. 463; Bracken v. Jones, 63 Texas, 184; Frisby v. Withers, 61 Texas, 134; Terrell v. Martin, 64 Texas, 121; Cantagrel v. Von Lupin, 58 Texas, 570.

*Lock McDaniel*, for appellee.

GAINES, ASSOCIATE JUSTICE.—This was a suit brought by appellee to recover of appellant a tract of land.    The petition was in the statutory form of an action of trespass to try title.    The land in controversy is a part of a survey known as the James Cox league, and lies between two channels or water-ways of a stream called Rocky Creek. Both above and below the land in dispute the waters of the stream run in a single channel; but above, at its eastern extremity, they divide at certain stages and pursue two different ways, which again unite at the western extremity of the tract.    There was testimony to show that at an early day the principal flow of the water was through the southern channel, and that it was then known as Rocky Creek.    But there was conflicting testimony upon this point.    It is, however, pretty well established that the waters now take the northern run, and that it is the stream which now bears the name of the creek, and that the southern channel is now called the Old Slough.    The plaintiff, who is the appellee here, claims a tract of land lying north of the creek, extending east and west from a point above the place where the channel divides into two, to a point below that at which the two ways unite.    He claims under deeds which call for Rocky Creek as the south boundary line.    The defendant claims the land lying south of the plaintiff's, and his deeds call for the creek as his north boundary line.

The plaintiff's chain of title as admitted in evidence consisted: 1. Of the "Abstract of Titled and Patented Lands," published by the authority of the Legislature, showing that the league was granted to James Cox. 2. A deed from Cox to John Lott. 3. A deed from Lott and wife to John F. Martin. 4. Proceedings in partition of the estate of John F. Martin, setting apart the land to J. F. Martin, Jr. 5. Deed from J. F. Martin, Jr., to W. T. Martin, the plaintiff.

It was shown that defendant claimed under a chain of title as follows: 1. Deed from H. James to A. D. Beaty. 2. Deed from Beaty to A. D. Bendick. 3. Deed from H. J. Neal, as administrator of the estate of Bendick, to W. T. Martin, the plaintiff. 4. Deed from the plaintiff to T. J. Haynie. 5. Deed from Haynie to Green Campbell. 6. Deed from Campbell to defendant.

The deed from J. F. Martin, Jr., to plaintiff is dated December 16, 1865; that from Bendick's administrator to him bears date March 1, 1872. The former calls for Rocky Creek as its south boundary line, and the latter for the same creek as its north boundary. Prima facie at least the plaintiff's claim under the two deeds embraced the land on both sides of the creek, without reference to the question which of the two channels is to be considered that creek, and included the land in controversy. Since the defendant asserts title to the tract in dispute through a chain of conveyances emanating from the plaintiff, it is evident, we think, that we have a common source, and that the plaintiff was not required to prove title in himself from the sovereignty of the soil. We do not hold that the defendant was precluded from showing that there was an outstanding title in some third person, and from defeating by such proof plaintiff's action. But while the title exhibited by plaintiff may not show title from the government, it does not appear affirmatively that any one else has such title. We know of no authority for admitting the book known as the "Abstract of Titled and Patented Lands" as proof that title had been issued by the State or the former government to the grantees named therein. But if the book did not show a grant to Cox, it did not show a grant to any one else. The deed from Cox to John Lott was admitted without objection having been made that it was not proved. The deed from Lott and wife was objected to upon the ground that it was not duly acknowledged and certified. What purports to be the acknowledgment of the wife is not in accordance with the statute, and is void. There was no objection that the certificate as to the husband was not sufficient, nor in our opinion would such objection have been well taken. The conveyance from Cox was to John Lott, and made the land either his separate property or community property of himself and wife. In either event he had the right to convey it, and it was not necessary that his wife should join in the deed. It may be that if Lott's deed had not con-

veyed his title, the plaintiff's acceptance of that deed would have been evidence of title in Lott at the time of its execution, and would have been sufficient to show as against plaintiff title in Lott at the time of the trial. But it passed whatever estate Lott had.

The defendant claiming under the plaintiff, who had deeds conveying the land on both sides of the creek, and it not appearing that there was a title superior to that of plaintiff outstanding in any third person, we are brought to the question whether plaintiff's deed to Haynie (through whom defendant claims) conveyed the premises in dispute. If the north channel of Rocky Creek only had been known by that name, it is clear that the deed in question conveyed the land in controversy, and that it would have passed by the subsequent deeds to the defendant, unless Campbell (defendant's vendor) had estopped himself by an agreement as to the boundary line, and defendant be concluded by that agreement. The testimony shows, we think, that both channels had at one time been known as Rocky Creek. The fact testified to by some witnesses, that they had never known the north channel to be so called, does not necessarily conflict with the testimony of others, to the effect that that channel was the original stream, and that it had been known by that name.

Among other conclusions the court found as follows: "There is great conflict of evidence as to what is Rocky Creek, and I find that * * * the upper line [meaning the north channel] is now the stream so known; that the old and new runs diverge from each other at or about J, and that from A to GNE is Rocky Creek [this is the north channel], and that from J southwest down the stream marked MEL to F is what is known to some as Rocky Creek [this is the south channel], and that it is the line recognized by Neal and Haynie. The preponderance of the evidence in the number and intelligence of the witnesses and opportunity of observation and long familiarity, is that as far back as 1843 the present or upper run was Rocky Creek, though there is evidence well supported that the lower run was also Rocky Creek as far or even farther back. I find that in low water the water generally ran in the old or lower run, but that in high water the current went down the upper channel—a rock bluff, embankment, or obstacle of similar character obstructing the flow in that channel until the stream rose above it. I find that unmistakably the lower run was the original channel of Rocky Creek." * * *

These conclusions are supported by the testimony, and from them it is to be inferred that the name of Rocky Creek was applicable to both channels. Which of them was more appropriately so denominated is a matter of no moment. We have then a case in which a call in a deed is apparently unambiguous, but which when applied to the ground discloses a doubt as to which channel was meant. It is clearly a case

of a latent ambiguity in which a resort to parol evidence is admissible to solve the doubt. We may remark just here, that the deed from plaintiff to Haynie does not appear in the statement of facts. There is not even a recital that such a deed was admitted in evidence. But the court's findings refer to the deed; and Haynie testified, in substance, that plaintiff and wife conveyed the land to him, and that in his deed to Campbell he copied the description of the land contained in this conveyance. The deed from Haynie to Campbell recites, that the land conveyed is the same land that was conveyed to the grantor by W. T. Martin and wife. The deed from Campbell to defendant describes the land by the same field notes as those employed in Haynie's conveyance to Campbell. The plaintiff testified, that "when I bought from John F. Martin the south stream was Rocky Creek, and when I bought from Neal he recognized the land north of that stream as my land. When I sold to Mr. Haynie I showed Mr. Haynie the old run of the creek for the north line. I sold Mr. Haynie the Neal tract." Neal testified: "I was administrator of Bendick's estate and sold plaintiff the land, and followed the old run of Rocky Creek. If that line [new stream] was Rocky Creek I have never sold the land. I thought the old stream or run was Rocky Creek." Haynie testified: "I got a tract of land from Wins. Martin, coming from Bendick's heirs. I sold to Green Campbell. It was a part of the Cox league. Martin and wife first sold to me. Martin showed me an old creek—no water in it."

The deeds under consideration state the quantity of land conveyed as 105¾ acres, and there was testimony, which was not disputed, that there was an excess in the tract, taking the south channel as the north boundary.

The testimony quoted makes it clear that the intention of the parties to the deed from Neal, administrator, to the plaintiff, was, that the land conveyed should be bounded on the north by the south channel of Rocky Creek, or the Old Slough, as it was known at the time of the trial; and that it was the understanding of the parties to the deed from plaintiff to Haynie that precisely the same land should be conveyed. There being a call in the deed not ambiguous in itself, but doubtful by reason of the fact that it was applicable to two different material objects having the same name, the actual intention of the parties to the conveyances must govern, and the old run or south channel of the creek must be taken as the true north boundary of the land conveyed. Since the defendant claims solely under Haynie, his title must be restricted to the same limits. Since it appears that the defendant derives his title from the deed made by the plaintiff to Haynie, and that deed did not convey the land in controversy, we conclude that the plaintiff has established his case, and that the judgment should be affirmed, unless the appellant has pointed out some material error by his assignments.

It follows, from what we have already said, that if the court erred in admitting in evidence the "Abstract of Titled and Patented Lands," and in finding that the land had been granted to Cox, these errors were immaterial. And we have already seen that there was no error in admitting in evidence the deed from Lott to John F. Martin. If the court erred in finding that the plaintiff showed title to the land in controversy by the statute of limitations of ten years, it is equally clear that that error, too, was harmless. He established a title independent of the statute of limitations.

But it is also complained, that the court erred in holding that defendant was not entitled to a judgment under his plea of limitations of five years. The court found that the defendant had had possession of the land in controversy for the requisite period before the institution of the suit, under his deed, which had been duly recorded, and that he had paid the taxes during that time. But it was also held, that since it was found that the defendant's land as described in his deed did not extend north of the south run of Rocky Creek, his deed did not avail him under his plea of limitation.

In this ruling there was no error. If the defendant's deed had covered more land than that which was conveyed by plaintiff to Bassett and by Bassett to Campbell the case would have been different. But his deed describes the land by precisely the same field notes as were employed to designate it under the two former deeds. If this should leave any doubt as to the intention of the parties to that conveyance, it is dispelled by the fact that it recites in substance that the land conveyed is the same land which was conveyed by Haynie to the grantor. We have already seen that the last mentioned deed only conveyed the land extending up to the south channel. The defendant's deed when properly construed does not include the land in controversy, and therefore does not support his plea of limitation.

Although the court found that the defendant had paid the taxes on the land, it may be gravely doubted whether the evidence was sufficient to justify that conclusion. His deed calls for 105¾ acres, and the testimony shows that there was an excess of about 10 acres, taking the south channel as the north boundary of the tract. Taking the north channel as the boundary, it would include about 20 acres more. He owned 94 acres in another tract on the Cox survey, and paid taxes on 200 acres of that survey only. Can it be said that he has paid the taxes on the land in dispute? It would seem that it is to be presumed that the payment was made upon the 200 acres, the title to which was undisputed.

It is also insisted, that the prayer of the petition was not sufficient to authorize the judgment that was rendered. The prayer is, "that the defendant [be cited] to answer this petition, and that plaintiff have

judgment for the restitution of the above described premises, and for damages and costs of suit." We think this sufficient to authorize a judgment for a recovery of the land and for a writ of possession.

We find no error which calls for a reversal of the judgment, and it is affirmed.

*Affirmed.*