MARY T. JACK V. MINNIE A. HOOKER *et al.*

No. 14,213.   (81 Pac. 203.)

SYLLABUS BY THE COURT.

1. WILLS—*Husband and Wife.* A husband or wife may bequeath away from the other more than one-half of his or her property, if the other spouse gives consent, in writing, executed in the presence of two witnesses.

2. —————— *Form of the Writing.* The form or name of the writing giving consent is not important, providing it sufficiently shows that the one consenting agrees to accept the provision made in the will in place of the share which the statute would give, and that it is duly witnessed.

3. —————— *Witnesses Need Not Subscribe.* It is not necessary that the witnesses subscribe their names to the writing; it is enough that it is executed in their presence.

4. —————— *Construction of Several Instruments.* When a will, lease and deed are made about the same time, and appear to be parts of one transaction, the court may consider all of them, and the circumstances under which they were executed, in interpreting the deed and in determining the purpose that it was intended to accomplish.

5. —————— *Valid Consent Given.* So interpreted, a deed executed by the wife to the daughter in the present case is held to be a valid consent to the provisions of a will in which the wife was given a life-estate in land, but which was ultimately to belong absolutely to the daughter.

Error from Reno district court; H. FIERCE, judge *pro tem.* Opinion filed June 10, 1905. Modified and affirmed.

#### STATEMENT.

THIS was a suit to determine the interests and rights of the parties herein to a tract of land in Reno county. In a petition filed by Minnie A. Hooker against Mary T. Jack and Albert R. Bowles she alleged that on January 7, 1904, her father, Robert Jack, was the owner of a quarter-section of land in Reno county, and on that day he made a will devising the land to her, sub-

ject to a life-estate in her stepmother, Mary T. Jack. The will, which was duly signed and attested, read:

"PLEVNA, KAN., January 7, 1904.

"I, Robert Jack, of Plevna, Reno county and state of Kansas, make this my last will. I give, devise and bequeath my estate and property, real and personal, as follows:

"That is to say, I give to my daughter, Minnie A. Hooker, the southeast quarter of section six (6), township twenty-four (24), range nine (9) west, except that in case my wife, Mary T. Jack, should survive me, then I desire that she should have full use and control of said land during her natural life; also my library, tool-chest, and farming implements.

"In witness whereof, I have signed, sealed, and published and declare this instrument as my last will, at Plevna, Reno county, Kansas, January 7, 1904.

ROBERT JACK."

At the same time he executed a lease to the land to Albert R. Bowles, a son of Mary T. Jack, for a term commencing on the day of execution and continuing until the death of Robert and Mary T. Jack. It contained provisions common to leases, with the additional stipulation "that at the death of the last survivor, Robert Jack or Mary T. Jack, the party of the second part [Albert R. Bowles] agrees to deliver said premises at once to Minnie A. Hooker."

It was further alleged that for the purpose of carrying out the conditions of the will, and as a consent to its terms respecting the land, it was agreed that a deed should at once be made, but as the scrivener who was preparing the documents had no forms of deeds with him the execution of the deed was postponed until the 9th day of January, when a deed, quitclaim in form, was made by Mary T. Jack to Minnie A. Hooker, in consideration of the sum of one dollar, which purported to convey the quarter-section, "except the life-estate of the grantor herein, which is hereby reserved, with possession of the premises from this date up to and during the natural life of the

grantor herein." It was alleged that the deed was executed in the presence of two witnesses, and Minnie A. Hooker as well, and, further, that the will, lease and deed were all a part of the same transaction, and were executed for the purpose of devising the land to Robert Jack's daughter, Minnie A. Hooker, giving a life-estate to his wife, Mary T. Jack, and providing that the latter's son, Albert R. Bowles, should have the use of the land during the lifetime of his mother, and pay the rentals to her during that time. The deed was executed for the purpose of carrying out the terms of the will, and was intended as a consent in writing to take the life-estate which is provided instead of the share that she might have had if no consent had been given.

It was then averred that Robert Jack died on January 24, 1904; that the will was duly proved and recorded, and that afterward, to wit, on February 18, 1904, Mary T. Jack, in violation of her agreement and consent to the terms of the will, made a pretended election and attempted to take under the law, and not under the will, and since claims that she is the owner of an undivided one-half interest in the real estate. The prayer of plaintiff below was that the court decree her to be the owner in fee simple of the real estate, subject only to a life-estate in Mary T. Jack; that the latter's pretended election to take under the law be canceled, and that the rights and interests of the parties be decreed, barring Mary T. Jack and Albert R. Bowles of all right, title and interest in the land, except the life-estate in Mary T. Jack. A demurrer to the petition, upon the ground that it did not state a cause of action against the defendants, was overruled, and the defendants, declining to plead further, elected to stand on the demurrer; and, therefore, judgment was rendered in favor of Minnie A. Hooker, adjudging that she was the owner in fee simple of the real estate, subject only to the life-estate of Mary T.

Jack, and also that the lease to Albert R. Bowles be canceled, and barring both defendants from any right, title or interest other than the life-estate in the property. Defendant Mary T. Jack complains, joining defendant Albert R. Bowles as defendant in error.

*George A. Vandeveer,* and *F. L. Martin,* for plaintiff in error.

*Prigg & Williams,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal question presented for decision is, Did Mary T. Jack give a valid consent to take the allowance made for her in the will instead of the share she might have taken under the statute? In the statute relating to wills it is enacted that "no man while married shall bequeath away from his wife more than one-half of his property, nor shall any woman while married bequeath away from her husband more than one-half of her property. But either may consent in writing, executed in the presence of two witnesses, that the other may bequeath more than one-half of his or her property from the one so consenting." (Gen. Stat. 1901, § 7972.) To make the consent effective it must be in writing, and executed in the presence of two witnesses. The deed made in connection with the other papers is a written relinquishment, and although 'the names of the subscribing witnesses are not attached to the instrument it is alleged to have been executed in the presence of two witnesses. It is not required that the witnesses shall sign the writing, but only that it shall be executed in their presence. (Gen. Stat. 1901, § 7972; *Neuber v. Shoel,* 8 Kan. App. 345, 55 Pac. 350.) Nor is the designation of the instrument giving consent important, if it amounts to a written agreement to relinquish the statutory share, and that more than one-half of the property may be devised elsewhere. A valid antenuptial

contract has been held to be sufficient to change the descent of property and bind a person to take the portion agreed upon instead of the statutory share. (*Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537; *King v. Mollohan,* 61 id. 683, 60 Pac. 731.)

It is insisted that although the deed is in writing, and the execution witnessed by the proper number of persons, it does not of itself clearly show that it was intended to be a consent to the provisions of the will. While the deed does not specifically recite that it is intended to operate as a consent, nor refer expressly to the other papers in connection with which it was executed, they appear to have been part of one transaction, and combine to effect a single purpose, and hence we may properly look to those papers, and the circumstances under which they were executed, to interpret the deed and determine the purpose that it was intended to accomplish.

All the papers were executed substantially at the same time, and in the presence of those concerned in the disposition of the property. It was the manifest purpose to make definite and final disposition of the property and to adjust the rights of all at that time. The testator had a daughter, and his wife had a son, to be provided for. First, he desired that his wife should have the benefit and earnings of the whole of the land during her lifetime, instead of title to the half, which the law would give her, and that it should be managed by her son, who under the lease was to enjoy the possession of the property and pay the rentals to his mother. Then, at her death, when the life-estate had terminated, he wished it to go for the benefit of, and absolutely to, his own daughter. The will expressly provided for his wife and daughter, the lease gave the possession to the wife's son, and in the deed there was consent and an obvious attempt to give the fee to the daughter. The connection between the will and the deed is easily apparent. Each of them

plainly refers to the life-estate of the wife. As that estate was provided for in the will alone the reference to it in the deed is internal evidence to connect it with the will. In this respect the case is quite unlike the one cited of *Sill v. Sill*, 31 Kan. 248, 1 Pac. 556, where the deeds sought to be linked with a will had been executed about a year before the making of the will, and bore no evidence of any connection with the will. In the present case the reference in the deed by Mrs. Jack to the life-estate, arising from the terms of the will, and the reservation of that estate to herself, were an acknowledgment that she was acquainted with the provisions made for her in the will, and by placing the title in the daughter subject to her life-estate she indicated her desire to confirm and give consent to the provisions of the will.

Writings of this character should be so construed as to give every part of them force and effect, if possible, and unless the deed is construed in connection with the will it will be inoperative, and the evident purpose of the parties thwarted. It is evident that the parties, as well as the notary who assisted them, were unacquainted with legal forms and the best methods of accomplishing their purpose; but when the papers executed are construed together it is manifest that all intended that Mary T. Jack should have a life-estate in the entire property, and that the deed was executed to evidence her consent to the provisions of the will.

The decision of the court with respect to this feature of the case is sustained, but its judgment canceling the lease must be modified. It was executed as a part of the transaction which has been upheld, and as nothing has been alleged in the petition or indicated upon the face of the lease that renders it invalid no reason is seen why it should be set aside. The judgment is, therefore, modified as to the lease, and in all other respects it is affirmed.

All the Justices concurring.