**LANGHAM et al. v. GRAY.  (No. 597.)**

(Court of Civil Appeals of Texas. Beaumont. July 1, 1920. Rehearing Denied Feb. 16, 1921.)

**1. Witnesses ⬅219(3) — Conversation between plaintiff and counsel admissible where privilege waived.**

In trespass to try title, plaintiff claiming under an instrument which the jury found was a deed, but which defendants claimed was a mortgage, testimony of plaintiff as to a conversation between him and counsel for defendants was improperly excluded, where if the conversation was privileged the privilege was clearly waived by plaintiff by going into the details of his transactions with counsel in his original testimony and offering such transactions as an explanation for his laches in filing suit.

**2. Trespass to try title ⬅12 — Defendants lawfully in possession could defend against plaintiff mortgagee out of possession.**

Defendants lawfully in possession could defend against plaintiff mortgagee out of possession suing in trespass to try title who had no right of possession though defendants were not able to show title in themselves to the land.

**3. Adverse possession ⬅80(1) — Deed made must contain description sufficient to identify land.**

To support title to land under the three or five years' statute of limitation, the deed under which the claim is made must contain a description sufficient to identify the land; a deed void for uncertainty of description necessarily being insufficient to support the plea.

On Rehearing.

**4. Adverse possession ⬅80(2) — Description sufficient though omitting state and county of location.**

Deed purporting to convey a tract or parcel of land, part of the J. S. Johnson one-quarter league, beginning at the northwest corner of said Johnson survey, running thence south, etc., held sufficient in its description for adverse possession to be claimed thereunder, though omitting to give the state and county of location, the date line showing it was executed at Beaumont, Tex., and the deed beginning state of Texas, county of Jefferson, and reciting that both grantor and grantee were citizens of such county, from which the presumption followed the land was located therein, and the check delivered to the grantor in payment for the land, together with a written notice of sale executed by the grantor, being sufficient to identify the land.

**5. Adverse possession ⬅115(1) — Evidence insufficient to raise issue of payment of taxes by defendants.**

In trespass to try title, plaintiff claiming under an instrument found by the jury to be a deed, but claimed by defendants to be a mortgage, evidence held insufficient to raise the issue of payment of taxes for the year 1912 by defendants, material on the issue of limitation.

Hightower, C. J., dissenting in part.

Error from District Court, Jefferson County; W. H. Davidson, Judge.

Suit by H. L. Gray against Thomas H. Langham, receiver, and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded for new trial.

E. L. Nall, C. W. Howth, and Oliver J. Todd, all of Beaumont, for plaintiffs in error.

E. E. Easterling, H. M. Whitaker, and Geo. C. O'Brien, all of Beaumont, for defendant in error.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

WALKER, J. On the 23d day of June, 1911, Sam Lee Gray executed to his brother, H. L. Gray, an instrument in the form of a general warranty deed, purporting to convey a certain piece of property. On the trial of this case below, H. L. Gray was the plaintiff, and it was the contention of the defendants that this instrument was a mortgage. The evidence was abundantly sufficient to raise this issue. On the 26th day of June, 1911, three days later, Sam Lee Gray, by warranty deed, conveyed the same property to McFaddin-Wiess-Kyle Land Company. Under this deed they went into immediate possession, and were not disturbed in this possession by H. L. Gray until this suit was instituted against them and their receiver, Thos. H. Langham, on the 27th day of September, 1917, in the usual form of trespass to try title, more than six years after the execution by Sam Lee Gray of the instrument under which plaintiff claimed. The case was submitted to the jury on special issues, and in answer to the same they found that plaintiff was holding under a deed, and on this finding judgment was rendered for the plaintiff. The defendants have duly perfected their appeal, and have presented this case to us on the following assignments:

(1) Error in excluding testimony.

(2) The court erred in not instructing a verdict for them on their plea of five years' limitation.

(3) The finding by the jury that the transaction between Sam Lee Gray and H. L. Gray was a deed rather than a mortgage was against the great weight and preponderance of the evidence.

Other questions are raised in the brief, but the disposition we are making of the appeal makes many of them immaterial, and the other assignments only present these issues from different angles.

We will discuss these issues in the order given.

[1] 1. Mr. Oliver J. Todd was of counsel for the defendants in the trial of this case in the court below and presented this case for them on submission in this court. While testifying in his behalf on his original examinaton, in answer to questions propounded to him by his counsel, H. L. Gray said:

"Sam just kept getting worse all the time and getting into different things. Sam was sick all the time. In about four or five days or a week or such a matter I was up in Mr. Todd's office, and the conversation led up. to this transaction between Sam Lee Gray and Mr. McFaddin, and he had noticed or heard something, noticed the two deeds on record I believe, and told me I didn't see that—he said he didn't think I ought to lose the place, and I told him I wasn't going to lose the place, and I asked him what he thought about and he told me to wait, and he would talk with me some more, but would not say when, and I said, 'All right,' and we started a conversation about different things, and one thing led up to anoth-

er, and he said, 'Right at this time I haven't got time to devote my time to it, but when I go through the records I will get myself familiar with the transaction and you come back here.'. Well, probably off and on for four or five months, that went on until finally I went up there, and he told me, 'Now I can't tell from the records and there may be something, a deed to that piece of land with reference to it that the records don't show, and I don't know where to get it, and you go off and get me an abstract or have an abstract made,' and so I came on down to the Jefferson County Abstract Company and ordered them to make an abstract, and he told me if he went right to work and devoted his time to it it would cost me a whole lot, but if he went along and took his own time he would charge me in the neighborhood of $100 or $150 for the abstract.

"I got the abstract and took it up and turned it over to Mr. Todd, and he had it there for a year and a half or a year or so, and he was always busy and he would say, 'Come back,' and finally I found a lawyer that would file the suit for me. And that was Mr. Herbert Reed, a young lawyer here in town, and he told me to get him an abstract and let him examine it, and I went to Mr. Todd's office and got it and delivered it to him and he filed this suit. That was in 1911, and for some days, maybe a half a day at a time, Sam would stay in bed, but one doctor, you see, would say, 'You will have to go to a lower or higher climate,' and we kept him going from one place to another until along in June, 1915, he died. Mr. Todd started this suit with me a few days after the deal was made, but I can't tell you when Mr. Herbert Reed started into it."

It was not denied by Mr. Todd that Mr. Gray did talk with him about this case; that Mr. Gray brought him an abstract of title to the property; that this abstract remained in his office a long time; that finally Mr. Gray called for the abstract, and gave it to another lawyer; and that at once suit was filed in the name of the plaintiff for the land. While he was a witness on the stand, the following questions were asked Mr. Todd, which he was not permitted to answer, on the ground that the answer called for a disclosure of privileged communications:

"State whether or not the plaintiff ever sought to employ you or consult with you as to whether or not you would accept employment to bring suit in his behalf or in behalf of Sam Lee Gray for the land in controversy."

If permitted, he "would have testified that plaintiff told him he had no cause of action, but his brother, Sam Lee Gray, had one."

"State whether or not you were ever employed by plaintiff at any time to bring suit for the land in controversy."

If permitted, he "would have testified that plaintiff sought to employ him to sue for said land in behalf of his brother, who still owned the land, but McFaddin had procured a deed from him while he was drunk and said deed should be canceled."

"State whether or not you ever agreed with the plaintiff to represent him in filing a suit for him for the land in controversy."

If permitted, he "would have testified that plaintiff at the time did not claim said land, but claimed same still belonged to his brother, Sam Lee Gray, and McFaddin had procured a deed from him while he was drunk, and wanted it canceled by suit."

"State whether or not the plaintiff, H. L. Gray, ever had any conversation with you with reference to employing you to represent Sam Lee Gray in an effort to recover the land."

On this question the bill of exceptions made this statement:

"Which evidence was offered for the purpose of showing that the suit proposed to be filed by H. L. Gray at the time was a suit on behalf of Sam Lee Gray to cancel the deed to McFaddin and others, and Sam Lee Gray still owned said land, and for the purpose of showing that plaintiff's attitude at that time was inconsistent with his present attitude, and said witness if permitted to would have so testified."

"State whether or not at the time H. L. Gray brought you the abstract and before that time there was any conversation between him and you with reference to your representing Sam Lee Gray."

With reference to this question, the bill of exception makes this statement:

"Which evidence was offered for the purpose of showing that the plaintiff sought to bring a suit on behalf of Sam Lee Gray to set aside a deed obtained from Sam Lee Gray while intoxicated, and same was offered because plaintiff had waived the privilege claimed by reason of the testimony of the nature inquired about, and because it was competent to contradict plaintiff as to said matter on which he had already testified, and to show at that time while Sam Lee Gray was still alive, plaintiff recognized his ownership of said land, and admitted his deed was only a mortgage, which evidence was objected to by defendants," etc.

Mr. Todd's answers, as given above, are taken from the bills of exception. The trial court examined Mr. Todd as follows:

"Q. Mr. Todd, I take it from the tread of your questions to Mr. Gray when he was on the stand that he did advise with you about this land out there? A. Well, I don't think I could exactly state the proposition; I don't know whether I can make a statement.

"Q. Did Mr. Gray tell you what purports to be any of the facts upon which he was seeking to have a recovery made of the land? A. He stated a few facts; nothing that is involved in this suit, however, I will say that. None of the issuable facts were discussed. He discussed the matter of bringing a suit, which would have been a different suit from this one, I will say that.

"Q. The objection is sustained, and I hold further it is wholly immaterial whether he was employed any time or not."

Reversible error was committed in excluding this testimony. If the conversation between Mr. Gray and Mr. Todd was privileged, this privilege was clearly waived by plaintiff when, in his original testimony, he went into the details of his transactions with Mr. Todd and offered these transactions as an explanation for his laches in filing this suit. His brother lived until 1915. During this time the defendants were in undisturbed possession of this property, cultivating, using, and enjoying the same, within the actual knowledge of plaintiff. Though plaintiff, during all these years from the date of his deed from his brother until this suit was filed in 1917, lived but a short distance from this land, he did not in any way disturb the possession of defendants. To tell the jury that he had been diligent all these years; that he had employed counsel, had prepared abstracts, had urged the filing of suit; that his attorney was willfully delaying the filing of the suit; and that the attorney he had employed was now representing his opponent— was to give a rational explanation, entirely consistent with his claim of ownership. But in doing this he put in issue his entire relations with Mr. Todd. Jones, in his work on Evidence, states this rule as follows:

"A client, however, who goes upon the stand in an attempt to secure some advantage by reason of transactions between himself and his counsel, waives the right to object to the attorney's being called by the other side to give his account of the matter. Any other rule will subject the lawyer to any kind of scurrilous and unjust attack, and convert the statute from being a mere shield into a weapon of offense." Volume 4, p. 535, § 576 (774).

There is not a more just application of this principle in the books. The law will not leave an attorney defenseless when subjected to an attack of this character by an interested witness. As affirmed by the rule just quoted, the "shield" afforded by the principle of privileged communications cannot be converted into a "weapon of offense." When Mr. Gray attempted to secure an advantage by reason of these transactions, he thereby waived his right to object to Mr. Todd giving his account of the matter, and subjected himself to a cross-examination on this point.

[2] We cannot sustain appellees' counter proposition against reversing this case, because the uncontradicted testimony does not show that he was entitled to the possession, nor that he was ever in possession of the premises. Hence the principle invoked, "that a mortgagee rightfully in possession cannot be evicted by the mortgagor or any one claiming under him * * * without pleading and proving the payment or tender of payment of the mortgage obligation," has no application. If appellee was not in possession of the premises, nor entitled to the possession, then under the uncontradicted evidence

in the case appellants were lawfully in possession thereof. Being lawfully in possession, they could defend against a mortgagee out of possession and who had no right of possession, though they were not able to show a title in themselves to the land.

[3] 2. The court did not err in refusing to instruct a verdict in favor of appellants on their plea of five years' limitation. On this record, this issue was not even in the case, and should not have been submitted to the jury. As filed for record, the deed to McFaddin-Weiss-Kyle Land Company thus described the land:

"All that certain tract or parcel of land and a part of the J. S. Johnson ¼ league. Beginning at the northwest corner of said Johnson survey running thence south along the west line thereon 3,325 varas to a point where an iron stake as place of beginning; running thence east 960 varas more or less to a point and post for corner on edge of marsh; thence north 2,565 varas more or less to the north line of said ¼ league; thence with the meander line of the river up the river 480 varas more or less to a point where a line parallel to said last described north and south line and distant 436 1/10 varas west therefrom intersects the meander line of said river; thence south along said last-named line 2,249 varas more or less to a point at the edge of the marsh; thence in a southerly direction along the meander line of said marsh; thence to the southeast corner of land known as the lands of T. S. Smith, the corner being 735 varas east of the west line of said survey and about 460 varas north of the south boundary line of the land herein conveyed; thence west 735 varas to the west line of said J. S. Johnson ¼ league; thence south along the west line 460 varas more or less to the place of beginning, containing 100 acres of land, more or less."

An examination of this description shows that the location of this land is not given, both the state and county being omitted. This omission is fatal to the deed. Kellner v. Randolph, 207 S. W. 169; Pfaff v. Cilsdorf, 173 Ill. 86, 50 N. E. 670; 2 Devlin on Deeds, 1915, 1916.

"To support title to land under the three or five years' statute of limitation, the deed under which the claim is made must contain a description sufficient to identify the land. A deed void for uncertainty of description must necessarily be held insufficient to support the plea." Michie's Digest, vol. 11, par. 3, p. 1063.

3. In view of another trial, we deem it improper to discuss the weight of the testimony on the issue as to whether plaintiff's instrument was a mortgage or a deed. The testimony was sufficient to take this issue to the jury.

All other assignments advanced by appellant are overruled. For the error committed by the court in excluding the testimony above discussed, this cause is reversed and remanded for a new trial.

## On Rehearing.

[4] The majority of this court has reached the conclusion that we were in error in our construction of the deed from Sam Lee Gray to McFaddin-Wiess-Kyle Land Company. Mr. Chief Justice HIGHTOWER adheres to the original opinion, on the ground that the description given in this deed does not locate the land and does not give sufficient data by which it can be located, by the aid of extrinsic evidence. The description is given in full in the original opinion.

It would seem that this land is fully located by reference to the calls in this deed. In surveying this land, following the calls in this deed, the surveyor found all the objects called for at the place and on the course and distance given. It is a part of the J. S. Johnson one-fourth league, the only survey in Texas by that name. It lies adjacent to the T. S. Smith place, which was identified, and it was not shown that Sam Lee Gray owned any other land in the J. S. Johnson league adjacent to the T. S. Smith place. It does not seem probable that any other tract of land in the world could meet the calls in this deed, and it being shown that this tract in controversy meets all the descriptive elements contained in the deed under which appellants claim, it is our opinion that the description is sufficient.

In Arthur v. Ridge, 40 Tex. Civ. App. 137, 89 S. W. 15, the land was located with reference to "Bear creek." It was not shown by the description that Bear creek was in Texas.

In Flanagan v. Boggess, 46 Tex. 330, our Supreme Court sustained this description:

"620 acres of headright of David Brown, situated about twenty miles north of Henderson, in the neighborhood of Belview."

It was not stated that this land was in Texas.

In Morrison v. Dailey, 6 S. W. 427, sustaining this description:

"Lancaster, June 28, 1887. Received from H. Morrison forty dollars on my place, known as the 'James Perry Tract of land,' which tract I have sold to him for forty-five hundred dollars, part cash, and the balance to bear interest at ten per cent. per annum until paid.
          "[Signed] Mrs. N. B. Dailey"

—our Supreme Court said:

"The petition described, by metes and bounds, the lands alleged to have been sold. * * * The description of the land is sufficient. All that is required is that the premises shall be so described that they can be definitely ascertained. By determining what land defendant owned at the date of the contract, which was known as the 'James Perry tract,' the property sold could be identified with certainty. So far, all the authorities are agreed. Ragsdale v. Mays, 65 Tex. 255; Fulton v. Robinson, 55 Tex. 401; Bitner v. Land Co., 67 Tex. 341, 3 S. W. Rep. 301; 1 Reed, St. Frauds, §§ 409–416; Browne,

St. Frauds, § 385; Pom. Spec. Perf. § 90; Wat. Spec. Perf. § 237."

See, also, Petty v. Wilkins, 190 S. W. 531.

In aid of this description, we announce the following propositions, which seem to be well sustained by the authorities:

1. On the fact that the date line of this deed shows that it was executed at Beaumont, Tex., and the deed begins "State of Texas, County of Jefferson," and recites that both the grantor and grantee are citizens of Jefferson county, Tex., the presumption follows that this land is located in Jefferson county, Tex.

In Frazier v. Lambert, 53 Tex. Civ. App. 506, 115 S. W. 1174, discussing this description, "Lot twenty-seven, block 3/929, and better known as No. 126 McKinnon street," the court said:

"There is no such want of description of the lot as to make the contract nonenforceable. The contract was dated Dallas, Tex., and the land described as follows: 'Lot twenty-seven, block 3/929, and better known as No. 126 McKinnon street.' This description was sufficient to identify the lot, and there was evidence, uncontradicted, fully identifying the lot mentioned in the contract. Watson v. Baker, 71 Tex. 748, 9 S. W. 867; Fulton v. Robinson, 55 Tex. 401; Morrison v. Dailey (Tex.) 6 S. W. 426."

See, also, Horton v. Murden, 117 Ga. 72, 43 S. E. 786; Butler v. Davis, 5 Neb. 523; Scheuer v. Kelly, 121 Ala. 323, 26 South. 4; Garden City Sand Co. v. Miller, 157 Ill. 225, 41 N. E. 753.

2. At the time Gray delivered the deed to McFaddin, McFaddin delivered to him, in payment for this land, a check with this indorsement:

"About 100 acres of land out of J. S. Johnson league, known as the Leonard place, payment in full."

The proof showed that the land in controversy was known as the Leonard place. This check was for $2,500, and was indorsed by Sam Lee Gray, in full for the above amount. At the time this check and deed were delivered, Gray also delivered to McFaddin the following written order:

"Beaumont, Tex., 6—26—11.

"John Puccio, Wall & Park Streets, City—

Dear Sir: You are hereby notified that I have this day sold my place that you are living on to the McFaddin-Wiess-Kyle Land Company, so please turn the same over to them at the end of your month, which is the 6th day of July, 1911.

"Yours very truly,　　Sam Lee Gray."

In connection with the delivery of this instrument, McFaddin testified:

"Sam Lee Gray and myself went to Puccio's store on Park street, and Sam Lee Gray called Puccio out to the car, and he came out there, and he told him he had sold the place he was occupying down there where he had his crop and sold it to me. He gave me a written order to Puccio to turn the property over to me at that time. I have that order."

These instruments, delivered contemporaneously with the delivery of the deed, should be considered in connection therewith in aid of the description. Considering these two instruments together, in aid of the description, the land is definitely identified. Ueckeur v. Zuercher, 55 Tex. Civ. App. 289, 118 S. W. 149; Cleveland v. Stanley, 177 S. W. 1181; W. S. Quimby Co. v. Sheffield, 84 Conn. 177, 79 Atl. 179; Jack v. Hooker, 71 Kan. 652, 81 Pac. 203; Sugg v. Town of Greenville, 169 N. C. 606, 86 S. E. 695; Taylor v. Harvey, 90 Neb. 770, 134 N. W. 647; O'Barr v. Turner, 16 Ala. App. 65, 75 South. 271; Kyle v. Jordan, 187 Ala. 355, 65 South. 522.

[5] On the issue of limitation which we discussed in our original opinion, it was necessary for appellants to show payment of taxes for the year 1912. The tax collector of Jefferson county testified:

That "in 1911 McFaddin-Wiess-Kyle Land Company, one of the appellants, rendered and paid taxes on 662.39 acres in the J. S. Johnson survey; that the taxes were paid January 29, 1912; that in 1912 they assessed and paid taxes on 670 acres of the Johnson survey and that the 1912 taxes were paid January 31, 1913; that for 1913 they assessed and paid taxes on 960 acres in the Johnson survey; and that the 1913 taxes were paid January 23, 1914."

It will be noted that from this testimony that appellants did not increase their tax renditions on this survey so as to include this land in controversy until 1913. It is not shown that appellants sold any lands during the years 1911, 1912, and 1913 owned by them on this survey. In our judgment this testimony was not sufficient to raise the issue of payment of taxes for the year 1912.

In Bassett v. Martin, 83 Tex. 344, 18 S. W. 589, a somewhat similar case, though not so strong, Judge Gaines said:

"It would seem that it is to be presumed that the payment was made for the 200 acres, the title to which was undisputed."

So without deciding whether this deed, under the construction which we have given it, could be the basis of a limitation title (Young v. Trahan, 43 Tex. Civ. App. 611, 97 S. W. 147; Brokel v. McKechnie, 69 Tex. 32, 6 S. W. 623), it is our judgment that this record does not raise such an issue.

Appellee's motion for rehearing is in all things overruled.

HIGHTOWER, C. J., dissenting in part.