**HARBERS et al. v. BRUNE et al.**    (No. 8251.)

(Court of Civil Appeals of Texas. Galveston. Nov. 21, 1922.)

**1. Specific performance ⟢19 — Contract to which plaintiff not a party not enforceable.**

A contract by landowners giving a named person the sale of certain land for 30 days, and providing that, if such person inside of that time procured a buyer, the owners would give 90 days after the signing of the option for inspection and examination, such party to pay the owner $100 as earnest money, which was to be deducted from said purchase price if sale was closed, otherwise to be forfeited, and providing for a commission of 5 per cent. to be paid to such person as broker, could not be specifically enforced by a purchaser thereunder.

**2. Specific performance ⟢29(2)—Description in contract for sale of land held insufficient to authorize remedy.**

A contract for the sale of land, describing it as "about 300 acres of land on the west side of the Frelsburg road, and said land being in the Zimmerscheidt survey," held not subject to specific performance because of insufficiency of description; it not disclosing in what county or state the land was located.

Appeal from District Court, Colorado County; M. Kennon, Judge.

Suit by A. J. Harbers and J. A. Pondrom against E. J. Brune and another. Judgment for defendants, and plaintiff Pondrom appeals. Affirmed.

Baker Botts, Parker & Garwood, of Houston, W. B. Garrett, of Austin, and H. A. Townsend, of Columbus, for appellant.

Green & Boyd, of Houston, for appellees.

LANE, J. This suit was instituted by appellant J. A. Pondrom against appellees, E. J. Brune and Carrie Leyendecker, for specific performance of a purported contract for the sale of land, hereinafter set out.

While the cause is styled "A. J. Harbers et al. v. E. J. Brune et al.," Harbers is not a party plaintiff, but the suit, so far as shown by the record, was a suit by J. A. Pondrom alone, seeking to force appellees, Brune and Leyendecker, to specifically perform the following contract:

"Frelsburg, Texas, 3/18/1919.
"Post Office Rt. 2, New Ulm.

"A. J. Harbers, Columbus, Texas—Dear Sir: I hereby agree to give you a sale of about 300 acres of land on the west side of the Frelsburg road, and said land being in the Zimmerscheidt survey, for 30 days, and inside of 30 days you are to have buyer for said land who I agree to give 90 days after signing of said option to inspect, examine titles, and make any test they may desire to make, said party to pay me $100.00 as earnest money at signing of said 90-day option, which is to be deducted from said purchase price if sale is closed, and in event they do not buy said land I am to keep the said $100.00 option money. I agree to take $20.00 per acre for said land and pay a sale commission of 5%, furnish abstract, and give warranty deed to said land.

"[Signed] E. J. Brune.
"[Signed] Carrie Leyendecker."

After setting out in hæc verba the contract in his petition, the plaintiff alleged its execution and delivery, and then alleged that at the time of the execution and delivery of the contract the defendants were the owners of an undivided 300-acre interest in a tract of land containing 519½ acres, which was described in his petition as being a part of the F. Zimmerscheidt league in Colorado county, Tex.; said 519½ acres being described by metes and bounds. He then alleged:

"That on March 18, 1919, said defendants, who were then the owners of an undivided interest in the land described, and being desirous of selling the same, entered into an agreement in writing by the terms of which defendants agreed to and did give unto one A. J. Harbers the right, privilege, and authority to sell for defendants said land and to contract for the sale thereof for and at the agreed price of $20 per acre; that said contract provides that the said A. J. Harbers should find a purchaser for

---

said land within 30 days from the date of said agreement and contract, and further provides that, if within said time the said Harbers did produce a purchaser for same at the price of $20 per acre, said defendants would enter into an agreement with said purchaser or purchasers whereby said purchaser or purchasers should have 90 days from the signing of said contract of purchase to inspect said property, examine the title thereto, and make any tests they might desire; that said contract also provides that said purchaser or purchasers were to pay unto defendants for such option $100 at the signing thereof, as earnest money, which was to be deducted from the purchase price of said property in the event such purchaser or purchasers desired to complete their purchase within 90 days from the signing of said option, but that, in the event the purchaser or purchasers did not buy said property from defendant within said time, then the $100 was to be forfeited to the defendants; that said contract also provides that defendants were to furnish abstracts of title to said lands, and give warranty deed thereto to the parties procured by the said Harbers within said time of 30 days, said contract being as follows: * * *

"That prior to and at the time of the execution of the above contract the said Harbers had been authorized by plaintiff to find certain gravel lands in Colorado county to purchase for and on account of plaintiff; that all purchases made by the said Harbers would first have to be approved by plaintiff; knowing that plaintiff was in the market for certain gravel lands in Colorado county, as heretofore stated, the said Harbers entered into said contract above set out with defendants for plaintiff whereby defendants agreed to convey to plaintiff the lands therein mentioned; that, after said contract was entered into by the said Harbers and said defendants for and on the account of this plaintiff, the said Harbers, in compliance with the authority theretofore given him by plaintiff, submitted said contract and proposition for sale to plaintiff for his approval; that plaintiff, upon such proposition being submitted to him, accepted the same and agreed in all things to comply with the provisions thereof; and that such approval of plaintiff of the acts of his said agent Harbers was within the 30-day period stipulated in said contract.

"That thereafter, on or about said 12th day of April, 1919, the said Harbers, at the request of plaintiff, demanded of defendants that they carry out the terms of said contract hereinbefore set out, and then and there for plaintiff tendered unto defendants, and each of them, said $100, the earnest money provided for in said contract between the said Harbers and the defendants above set out, but that defendants, and each of them, then and there refused to carry out said contract, and refused to execute a conveyance of their interest in said land to plaintiff; that plaintiff was on the dates above set out, and at all times since said dates, and is now, ready, willing, and able to purchase said land at said price of $20 per acre, which total purchase price plaintiff here now tenders into court, and here now offers in all things to comply with the terms of said contract of purchase and sale. * * *

"That it was the intent of the said Harbers and defendants at the time of the execution of

the contract dated March 18, 1919, to convey to any purchaser that he might find within the specified time, and with whom he was to contract for the sale of said land under said contract, all of their undivided interest in and to said tract of land therein described; that this was the understanding of the said defendants and the said A. J. Harbers; but that, through a mutual mistake or oversight, this was not specially set out in said instrument of writing.

"Wherefore plaintiff prays the court that he have judgment that defendants and each of them specifically perform and carry into execution said agreement by conveying said undivided interest in said lands to plaintiff; that plaintiff have judgment for title to and possession of the undivided interest of defendants in and to said lands and premises, for costs of suit, and for such other and further relief, special and general, in law and in equity, that plaintiff may be justly entitled to."

Defendants answered by general demurrer, and also by five special exceptions as follows:

(1) "They specially except to said petition for the reason that it is shown upon the face thereof that the instrument or contract sued on and mentioned in said petition is without any consideration whatever valuable in law; and of this they pray judgment of the court."

(2) "They specially except to said petition for the reason that said instrument or contract is unilateral and is wanting in mutuality; that same in no wise fixes any liability or obligation upon the part of the plaintiffs."

(3) "They specially except to said petition for the reason that it is shown upon the face thereof that it is an effort to enforce specific performance of a contract, which said contract is not in writing and signed by all parties thereto, as required by law; that said instrument does not set out the terms of the contract to be entered into, nor does it describe in any manner the land involved, and of this they pray judgment of the court."

(4) "They specially except to said petition for the reason that the instrument or agreement mentioned therein cannot be specifically enforced for the reason that the same shows upon its face that it is not a completed or concluded contract, but, on the contrary, it is merely an effort, undertaking, or treaty by and between the parties to enter into some character of contract in the future, and the terms of said contract, as well as the description of the property, to be determined thereafter."

(5) "Further, they specially except for the reason that in said instrument it is specifically provided that the prospective purchaser is to place in escrow as earnest money $100, and, if he fails and refuses to perform the contract to be thereafter entered into, that he shall be absolved from any liability upon surrendering the $100 to defendants, and for this reason same cannot be specifically enforced, and is therefore void; and of this they pray judgment."

And for further answer they say that—

"Should same be necessary, they deny all and singular the matters and things alleged in said petition, and especially do they deny those allegations in which it is alleged that the proper-

ty is described in the instrument sued on, and demand strict proof thereof; and of this they put themselves upon the country. They specially deny that they agreed to convey an undivided interest in said land or any land.

"They further represent to the court that said contract or instrument is nonenforceable for the reason that same is without any consideration whatsoever valuable in law; that it is expressly provided in said instrument that, in the event the plaintiffs should not desire to take said land, they will be absolved from any and all liability to so do by the payment of $100, thereby rendering said contract nonenforceable.

"They further allege that the land mentioned in said instrument and particularly described in the petition is owned jointly and in common by defendants and Mrs. Laura Brune, and that same has never been partitioned or divided among said parties, and that said instrument was never executed or signed by Mrs. Laura Brune, who owns in her own separate right and estate an undivided interest in said property, but, on the contrary, plaintiffs knew that the said Mrs. Laura Brune failed and refused to sign or execute the written instrument in question, or any other instrument with reference to any disposition of said land, and the said Mrs. Laura Brune now refuses and has all the while refused to sign or execute the contract mentioned, all of which was well known to plaintiffs.

"Defendants deny that they ever signed or executed any contract in writing, as required by law, for the conveyance of the land mentioned."

The trial court sustained defendants' general demurrer, and, upon the refusal of the plaintiff to amend his petition, judgment of dismissal was rendered. From such judgment the plaintiff has appealed.

Appellant insists that the court erred in sustaining the defendants' general demurrer, and therefore the judgment should be reversed, and the cause remanded.

[1] We do not think the court erred in its ruling. The contract, specific performance of which is sought to be enforced against appellees, was not made by appellant, nor does it on its face purport to have been entered into in behalf of appellant by A. J. Harbers, but, to the contrary, it shows that Harbers was acting on his own initiative and in his own interest as a broker for an expressed consideration of 5 per cent. of the money for which the land was to be sold. Indeed, it is alleged in the plaintiff's petition:

"That it was the intent of the said Harbers and defendants (Brune and Leyendecker) at the time of the execution of the contract dated March 18, 1919, to convey to any purchaser that he (Harbers) might find within the specified time, and with whom he was to contract for the sale of said land under said contract, all of their (defendants') undivided interest in said tract (519½ acres) of land; that this was the understanding of the said defendants and the said A. J. Harbers; but that, through a

mutual mistake or oversight, this was not specially set out in said instrument of writing."

These allegations are equivalent to an allegation that it was understood at the time of the execution of the contract by appellees, Brune and Leyendecker, and Harbers, that Harbers was not the agent of appellant Pondrom, but that he entered into the contract with the understanding and agreement of the contracting parties that if he, Harbers, would find one who would, upon the terms and conditions set out in the contract, purchase defendants' land at $20 per acre, defendants would pay him 5 per cent. of the purchase money for his services. We do not think the contract is susceptible of any other construction. It is clear, we think, that the contract set out and pleaded by appellant, together with the allegations of the petition set out above, negatives and destroys the allegation in the petition that Harbers was acting as the agent of appellant in making the contract. This being true, then it appeared from the petition, containing a copy of the contract, that there was no privity of contract between appellant and appellees, and therefore said contract was unenforceable against appellees by appellant, and therefore the court did not err in holding that the petition did not allege a cause of action against them.

[2] An additional reason why the judgment of the court should be sustained, independent of that already given, is that the land sought to be described is not sufficiently described in the contract that it can be identified, and therefore the contract cannot be specifically enforced by the court. Kellner v. Ramdohr (Tex. Civ. App.) 207 S. W. 169; Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 104; Langham et al. v. Gray (Tex. Civ. App.) 227 S. W. 741.

The description of the land as set out in the contract is as follows:

"About 300 acres of land on the west side of the Frelsburg road, and said land being in the Zimmerscheidt survey."

There is nothing in this description showing where or in what county or state the Frelsburg road is situated, or to show in what county or state the Zimmerscheidt survey is situated, or to show that it was an undivided interest in a larger tract.

In the case of Langham v. Gray, supra, in passing on the sufficiency of the description of the land attempted to be conveyed, the court said:

"An examination of this description shows that the location of this land is not given, both the state and county being omitted. This omission is fatal to the deed. Kellner v. Randolph, 207 S. W. 169; Pfaff v. Cilsdorf, 173 Ill. 86, 50 N. E. 670; 2 Devlin on Deeds, 1915, 1916."

The other cases cited fully sustain the holding above quoted.

For the reasons pointed out, the judgment of the trial court is affirmed.

Affirmed.